Keith JACKSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

and

Daron Haydon, Appellant,

v.

Commonwealth of Kentucky, Appellee.

Nos. 2004–SC–0118–MR, 2004–SC–0319–MR.

Supreme Court of Kentucky.

March 23, 2006.

As Amended March 29, 2006.

Frank Wm. Heft, Jr., Louisville, for Appellant Haydon.

Bruce P. Hackett, Deputy Appellate Defender, Louisville, for Appellant Jackson.

Gregory D. Stumbo, Attorney General, Ken W. Riggs, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for Appellee.

Opinion of the Court by Justice GRAVES.

Appellants, Daron Haydon and Keith Jackson, entered conditional guilty pleas to four counts each of attempted murder and first-degree robbery, and one count each of first-degree assault. Jackson was additionally charged with possession of a firearm by a convicted felon and tampering with physical evidence. Appellants were sentenced for each crime and ordered to serve a total of twenty years imprisonment. Because both Appellants have appealed the same issues to this Court as a matter of right, we have consolidated the appeals for review. Ky. Const. § 110(2)(b). For the reasons set forth herein, we vacate Appellants' convictions and sentences and remand for further proceedings.

The above crimes stem from an incident which occurred on March 16, 2002. The Commonwealth alleged that Appellants, who were each armed with a gun, approached a truck that was sitting at a carwash in Louisville, Kentucky. With their guns drawn, Jackson, who was masked, came upon the passenger side of the vehicle and Haydon, who was unmasked, appeared at the driver's side. The four male occupants were ordered to get out of the truck, to empty their pockets, and to get on the ground. As one of the men, J. Louis Nance, got out of the truck, he pulled a gun and struggled with Haydon. In the ensuing struggle, both Nance and Haydon were shot.

During police investigation into the matter, both Appellants made incriminating statements to the police. After indictment, Appellants moved to suppress their statements and for separate trials. In the alternative, each Appellant moved to redact his co-defendant's statement. The trial court denied Appellants' motions to suppress statements and for separate trials. Upon these denials, Appellants entered conditional pleas of guilty pursuant to RCr 8.09, reserving the right to appeal the following issues: (1) the trial court's denial of their motions to suppress statements made to police; (2) the trial court's denial of their motions to redact their co-defendant's statements; and (3) the trial court's denial of their motions for separate trials. We now address Appellants' arguments as a matter of right. Ky. Const. § 110(2)(b).

## I. Motions for Separate Trials

Appellants first argue it was error for the trial court to deny their motions for separate trials pursuant to RCr 9.16. "RCr 9.16 requires the trial court to grant severance if it appears that a defendant will be prejudiced by a joint trial." *Skinner v. Commonwealth*, 864 S.W.2d 290, 294 (Ky.1993). The standard of review when a trial court denies such a motion is abuse of discretion. *Id.*

At the hearing on their motions, Appellants argued that separate trials were necessary to comply with the requirements of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In *Bruton*, the United States Supreme Court held that it was a violation of the Confrontation Clause of the United States Constitution to admit unredacted out-of-court hearsay statements made by a non-testifying defendant at trial if those statements

implicate a co-defendant unless that co-defendant has a fair chance for cross-examination. *Id.* at 125, 88 S.Ct. 1620. The Commonwealth argued that the incriminating out-of-court hearsay statements in this case constituted an exception to the *Bruton* rule because these statements contained "particularized guarantees of trustworthiness." Citing *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) and *Gabow v. Commonwealth,* 34 S.W.3d 63 (Ky.2000), the trial court agreed and accordingly, denied Appellants' motions for separate trials.

Since the trial court's ruling on the above matter, the United States Supreme Court has overruled those portions of *Ohio v. Roberts, supra,* and *Gabow v. Commonwealth, supra,* which hold that out-of-court hearsay statements made by witnesses which are testimonial in nature may be admitted against a defendant if they (1) fall under a "firmly rooted hearsay exception" or (2) bear "particularized guarantees of trustworthiness." *See Crawford v. Washington,* 541 U.S. 36, 60–61, 124 S.Ct. 1354, 1369–70, 158 L.Ed.2d 177 (2004). While the Supreme Court "left for another day any effort to spell out a comprehensive definition of 'testimonial,'" it held that "[w]hatever else the term covers, it applies at a minimum to ... police interrogations." *Id.* at 68, 124 S.Ct. 1354.

■ The Commonwealth makes no attempt to distinguish this case on its facts or to argue that *Crawford v. Washington, supra,* does not function to abrogate the reasoning supporting the trial court's decision in this case. Furthermore, the Commonwealth does not dispute Appellants' contention that the statements considered by the trial court were testimonial in nature. Instead, the Commonwealth presumes error and argues that any error committed by the trial court was harmless error beyond a reasonable doubt. *See*

*Caudill v. Commonwealth,* 777 S.W.2d 924, 926 (Ky.1989) (applying harmless error analysis for Confrontation Clause errors). It urges this Court to consider the evidence they *would have* presented at trial in order to prove that the error was harmless in this case. *Id.* at 925 (must consider a "host of factors" which reflect on the "overall strength of the prosecution's case" in order to determine whether harmless error exists).

■ We reject the Commonwealth's argument as misplaced. The harmless error doctrine does not apply to hypothetical trial scenarios. First, such an inquiry would be entirely too speculative to satisfy constitutional standards. Second, applying the doctrine outside of an actual trial would misconceive its purpose, which is to ensure that fair trials are not overturned on mere technicalities. *See Quarels v. Commonwealth,* 142 S.W.3d 73, 81 (Ky. 2004) (citing *Arizona v. Fulminante,* 499 U.S. 279, 307–09, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)) (harmless error doctrine is meant to focus on errors which occurred during the presentation of the case to the jury). Since no actual trial was held in this case, we reject the Commonwealth's argument that the harmless error doctrine may be applied in this instance.

■ Rather, the real question to be determined in this instance is whether the presumed error constituted an abuse of discretion. *Gill v. Commonwealth,* 7 S.W.3d 365, 369 (Ky.1999) ("A trial court's decision to deny a motion for separate trials is reviewed for abuse of discretion.") While there is no doubt that the trial court ruled according to valid and accepted law at the time of its ruling, that law has been radically altered by *Crawford v. Washington, supra.* Since the trial court relied principally on reasoning which has been abrogated by a higher court, we must assume an abuse of discretion and vacate the

trial court's sentence. *See Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649, 661 (1987) (newly declared constitutional rule in criminal cases is applied not only to prospective and pending cases, but also to those cases that are pending on direct appeal at the time of the change). Appellants shall be allowed to withdraw their guilty pleas pursuant to RCr 8.09 and upon such withdrawal, the trial court is ordered to reexamine its determination to deny separate trials or redact their statements in light of *Crawford v. Washington, supra.*

## II. Motions to Suppress Statements

■ Appellants next argue the trial court erred when it denied their motions to suppress certain statements made to police because the statements were obtained in violation of their constitutional rights. When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law. *Welch v. Commonwealth,* 149 S.W.3d 407, 409 (Ky.2004).

### A. Appellant Haydon

Appellant Haydon argues that statements made by him on March 18, 2002, should be suppressed because these statements were obtained in violation of his Fifth Amendment rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On that day, police came to interview Haydon in the hospital where he was recovering from the gunshot wound he received at the scene of the attempted robberies. While the police administered *Miranda* warnings immediately before eliciting the taped statements at issue, Haydon claims they violated his Fifth Amendment rights because (1) they refused to stop the interview at the point when he asked for an attorney, (2) they

questioned him during a time when he was unable to make free and rational choices, and (3) they utilized a "question-first" technique that has since been invalidated by *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). The Commonwealth counters that (1) Haydon's request for an attorney was not clear and unequivocal and thus, did not function as a valid request pursuant to *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), (2) the evidence supports the trial court's conclusion that Appellant was coherent and able to understand the full import of his decisions at the time he was interviewed, and (3) *Missouri v. Seibert, supra* is distinguishable from this case.

■ We are compelled to note that the threshold issue in this case (and in any case involving a perceived violation of *Miranda* rights) is whether the defendant was subject to a custodial interrogation at the time he claims he was denied any of his *Miranda* rights. It is always necessary to determine this threshold issue in cases such as this because only statements made during custodial interrogations are subject to suppression pursuant to *Miranda. Welch v. Commonwealth,* 149 S.W.3d 407, 410 (Ky.2004); *Callihan v. Commonwealth,* 142 S.W.3d 123, 126 (Ky. 2004). However, this issue was not presented before the trial court and presumably conceded by the Commonwealth at Haydon's suppression hearing. Accordingly, the issue is not reviewable. *Carrier v. Commonwealth,* 142 S.W.3d 670, 676 (Ky.2004).

■ Since it has been acknowledged by the Commonwealth that Haydon was subject to custodial interrogation at the time his statements were taken on March 18, 2002, we next must consider whether Haydon's rights were validly waived pursuant to *Miranda.* In his first argument,

Haydon argues that his Fifth Amendment right to counsel was violated when police refused to stop the interrogation despite his "clear and unequivocal" requests for an attorney. Determining whether a specific exchange is a "clear and unequivocal" request for an attorney pursuant to *Edwards v. Arizona, supra,* or *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) requires an application of law to facts which must be reviewed *de novo. See Kotila v. Commonwealth,* 114 S.W.3d 226, 235 (Ky.2003) (applying law of *Edwards, supra,* and *Davis, supra,* to facts found by trial court).

A review of the record shows that Haydon made mixed references to an attorney during his interrogation. The Commonwealth argues that when the interrogation is reviewed in its totality, it is clear that none of these references indicated an unequivocal desire to have an attorney present during the custodial interrogation. *See Edwards, supra* at 484, 101 S.Ct. 1880 (must invoke right to have counsel present *during custodial interrogation* ). Rather, the investigators reasonably believed that Haydon was referring to a desire to talk to his attorney regarding another pending matter and to have an attorney to represent him regarding that case. *See Kotila,* 114 S.W.3d at 235 (desire to contact attorney to file a civil suit against police was not invocation of right to have counsel present during custodial interrogation). Appellant Haydon argues that the United States Supreme Court's decision in *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) prevents this Court from considering the totality of the interrogation because "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Id.* at 100, 105 S.Ct. at 495.

In *Smith v. Illinois,* the United States Supreme Court reiterated the bright line rule requiring police officers to cease all questioning at the moment a suspect reasonably appears to make a "clear and unequivocal" request for an attorney. *Id.* at 98, 105 S.Ct. at 494 (citing *Edwards, supra* ). The Supreme Court explained that "[i]n the absence of such a bright-line prohibition, the authorities through 'badgering' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance." *Id.* at 98, 105 S.Ct. at 494. In that case, the suspect reasonably appeared to answer unequivocally [1] when the investigator informed him of his right to consult with a lawyer and to have a lawyer present during the interrogation. *Id.* at 92–93, 105 S.Ct. at 491. The Court found that the investigator's subsequent attempt to clarify the suspect's response [2] was unlawful and may not be considered when determining whether the suspect's initial response was "clear and unequivocal." *Id.* at 98, 105 S.Ct. at 494.

In this case, Haydon twice appeared to make statements indicating that he wanted

---

1. When the investigator told the suspect that he had a right to consult with a lawyer, the suspect answered, "Uh, yeah, I'd like to do that."

2. After the suspect's unequivocal answer, the investigator followed up with the following exchange:
 Q. Do you wish to talk to me at this time without a lawyer being present?

A. Yeah and no, uh, I don't know what's what, really.
Q. Well. You either have [to agree] to talk to me this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.
[A]. All right. I'll talk to you then.

a lawyer. The first exchange proceeded as follows:

> Investigator: Okay. You have the right to talk to a lawyer prior to any questioning, or making of any statements, and to have him present with you while you're being questioned.
>
> Haydon: Yes, sir. Could I get a phone in here so I can talk to a lawyer?
>
> Investigator: You want a lawyer?
>
> Haydon: Yeah. Already, already done did, ta...., that's what that money was for? I can't call him, though, I ain't got no phone in here?
>
> Investigator: Are you sayin'; at this time, you don't wanna, this is Detective High..., at this time, you wanna give us a statement about what happened, or you don't?
>
> Haydon: What do you mean by that?
>
> Investigator: You want to give us, do you wanna talk to us?
>
> Haydon: I mean, I'm telling y'all, I done told y'all the story what happened? But, I wanted to talk to my lawyer about the other case, he don't even know nothing about this s—t?
>
> Investigator: Okay, We're not involved in your other case.
>
> Haydon: Okay.
>
> Investigator: Okay. So, you, you wanna talk to us about what, what happened uh, on the uh, 16th?
>
> Haydon: Was it, yeah, is that the day it happened?

At this point, the investigator continued to read Haydon his *Miranda* rights. Then, the following exchange occurred:

> Investigator: Okay. Uhm, I have read the statement of my rights, I understand what my rights are. I am willing to make a statement, answer questions. I do not want a lawyer here at this time, I understand, and know what I am doing.

> Haydon: I do want a lawyer.
>
> Investigator: Okay.
>
> Investigator: Once again, uh, do you want a lawyer in regards to your other case?
>
> Haydon: [This] case ain't even started yet? Right? But, when it starts, I am gonna have a lawyer for it. That's what I'm sayin'?
>
> Investigator: Okay. You're saying, I just wanna make sure I'm clear, okay. We're not here to talk about your domestic ...
>
> Haydon: Right.
>
> Investigator: Domestic case that you uh ... had a warrant on.
>
> Haydon: Well, I am gonna have a lawyer for this case, if that's what y'all wanna know. Yes?
>
> Investigator: Eventually?
>
> Haydon: Yes.
>
> Investigator: Yes.
>
> Investigator: Yes, you will have one.
>
> Haydon: Okay.
>
> Investigator: But, you're willin' to talk to us right now with[out] one, right?
>
> Haydon: Yeah, yeah, yeah. Of course?

Pursuant to *Smith v. Illinois, supra,* Appellant argues that the investigators were required to cease questioning immediately upon hearing an unequivocal request to contact or talk to an attorney and to not engage in any subsequent exchanges for the purpose of clarifying Appellant's response. However, the United States Supreme Court was careful to state, "We do not decide the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself ...." *Id.* at 99–100, 105 S.Ct. at 495.

 Judge Abramson made findings of fact stating that there was confusion between Haydon and the investigators about whether the investigators were there to talk with Haydon about pending, unrelated domestic charges. Judge Abramson noted that Haydon perpetuated this confusion by telling the investigators that he wanted to talk to his lawyer about the unrelated, domestic case. The investigators attempted to clarify this confusion by informing Haydon that they were not there to talk about the domestic case and only wanted to talk about this case. Judge Abramson found that the investigators' belief that Haydon was invoking his right to an attorney as it related to the domestic case and not this case was predicated on prior knowledge which indicated that (1) Haydon had pending charges against him in a domestic matter; (2) the investigators had not yet decided whether they were going to charge Haydon with a crime in this case; and (3) Haydon had been informed of his rights prior to going on tape and presumably agreed to waive them at that time. We find no clear error in Judge Abramson's factual findings in this regard. *Welch v. Commonwealth,* 149 S.W.3d 407, 409 (Ky.2004) (when reviewing motions to suppress, factual findings of the trial court will not be disturbed unless they are clearly erroneous).

In light of these factual findings, we also agree with Judge Abramson that it was reasonable for the investigators to believe that Haydon's seemingly unequivocal requests were regarding his pending, unrelated domestic case and thus, were not unequivocal as they related to this case. Thus, when Appellant's statements are considered in light of all the preceding circumstances, we cannot say these statements were made with "sufficient clarity that a reasonable police officer would understand the statement to be an invocation of the defendant's constitutional right to have counsel present during a custodial interrogation." *Kotila,* 114 S.W.3d at 235. Accordingly, we find no error in the trial court's decision finding that Haydon failed to invoke his right to have an attorney present during his custodial interrogation on March 18, 2002.

 Citing *Mincey v. Arizona,* 437 U.S. 385, 401, 98 S.Ct. 2408, 2418, 57 L.Ed.2d 290, 306 (1978), Haydon next asserts that his statements were not voluntary because he was either under the influence of painkillers, or in a lot of pain, at the time he was questioned in his bed at the hospital. This exact issue was presented before and determined by the trial court during Haydon's suppression hearing. After careful review, we find that the evidence in the record is more than sufficient to support the trial court's determination that the totality of the circumstances supported a conclusion that Appellant's statements were free and voluntary despite his presence in the hospital at the time he was interrogated.

 Appellant Haydon lastly argues that police utilized a "question-first" technique that has since been invalidated by *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004) to procure his March 18, 2002, statements. In *Missouri v. Seibert, supra,* a majority of the United States Supreme Court found that use of the invalid "question-first" technique during custodial interrogations necessarily casts doubt on the voluntary nature of any subsequent *Miranda* waivers. *Id.* at 612–13 and 619, 124 S.Ct. 2601 (Kennedy, J., concurring), 124 S.Ct. at 2610–11 and 2614 (Kennedy, J., concurring). Because *Missouri v. Seibert* was a plurality holding, this Court has held that we need only be confined to the "position taken by those Members who concurred in the judgments on the narrowest grounds." *Callihan v.*

*Commonwealth,* 142 S.W.3d 123, 126 (Ky. 2004) (quoting *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 993, 51 L.Ed.2d 260 (1977)). We have determined that the narrowest holding, rendered by Justice Kennedy, precludes use of the technique only "where police deliberately employ the technique to circumvent the suspect's *Miranda* rights." *Id.* 125–26. We further held that such a determination cannot be made "absent an evidentiary hearing" addressing the specific issue. *Id.* at 126.

In this case, there is evidence on the record suggesting that a "question-first" technique may have been employed in the questioning of Haydon on March 18, 2002. Accordingly, upon withdrawal of Haydon's guilty plea pursuant to RCr 8.09, the trial court shall conduct an evidentiary hearing for the purpose of reexamining its determination to deny suppression of his March 18, 2002, statements in light of *Missouri v. Seibert, supra.*

 Finally, Appellant Haydon argues that statements made by him on March 20, 2002, also should have been suppressed for the following reasons, (1) they were inadmissible as a result of the improper tactics utilized on March 18, 2002, (2) they were improperly obtained while Haydon was under the influence of pain or pain killers, and (3) they were obtained using the "question-first" technique which was invalidated by *Missouri v. Seibert, supra.* While we find Appellant's second argument regarding the influence of pain or pain killers to be totally without merit, we reserve for the trial court the determination as to whether Haydon's March 20, 2002, statements were (1) inadmissible in light of its re-examination of his March 18, 2002, statements as set forth above, or (2) independently obtained in violation of *Missouri v. Seibert, supra.*

## B. Appellant Jackson

Appellant Jackson's appeal of the denial of his motion to suppress also focuses on an alleged violation of his *Miranda* rights. Jackson was interrogated for approximately thirty (30) minutes before being read his *Miranda* rights. During the initial thirty (30) minute interrogation, Jackson made incriminating statements. Upon making the incriminating statements, Jackson was arrested and read his *Miranda* rights, which he waived. Upon waiver of his *Miranda* rights, Jackson was questioned regarding the substance of his initial statements. Jackson now argues that his waiver of *Miranda* rights after the initial questioning is invalid pursuant to *Missouri v. Seibert, supra.* We disagree. Jackson's situation differs from Haydon's situation because the trial court specifically found that Jackson was not in custody at the time he made his initial statements to police. Because we agree with the trial court regarding this issue, we find *Missouri v. Seibert, supra,* to be inapplicable to Jackson's case.

After hearing Jackson's name from several sources during the course of his investigation, the lead investigator in the case, Detective Wheeler, learned that Jackson was scheduled to appear in traffic court the next day. On March 19, 2002, Detective Wheeler and two other detectives approached Jackson at the courthouse and told Jackson that his name had come up in a homicide investigation. The detectives asked Jackson to accompany them back to the police station to talk about their investigation and Jackson agreed. While there was conflicting testimony as to what happened next, the trial court made a finding of fact that Jackson was not restrained or arrested when he accompanied the detectives to the police station. When they arrived at the station, Jackson was placed in a small interrogation room and left

alone for approximately 10–15 minutes. Detective Wheeler then came back into the room and spoke with Jackson for "some time." After approximately thirty (30) minutes of questioning, Detective Wheeler decided to arrest Jackson based on the statements he had just obtained. *Miranda* warnings were immediately administered, but Jackson waived his rights. Jackson subsequently gave additional statements regarding the substance of the statements he made prior to the *Miranda* warnings, which were recorded. After the interrogation was concluded, Jackson was taken to jail.

At the hearing, the trial court found that Jackson was not in custody until the point when Detective Wheeler arrested Jackson mid-interrogation. Jackson argues the totality of the circumstances in this case do not support the trial court's determination. "[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 320, 114 S.Ct. 1526, 1528–1529, 128 L.Ed.2d 293 (1994). "[T]he ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id.*

Jackson contends his case differs from other cases where custody was not found in the following ways: (1) he was never informed by the detectives that he was not under arrest or was free to leave, and (2) the coercive posture of the situation was heightened because he was arrested mid-interrogation and not allowed to go home after the interview. *See, e.g., California v. Beheler*, 463 U.S. 1121, 1122, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (suspect was specifically informed that he was not under arrest and was permitted to go home after interrogation), *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (same); *Little v. Commonwealth*, 991 S.W.2d 141, 141–42 (Ky.App.1999) (suspect was advised that he was not under arrest and was not required to speak with police). While the above facts are relevant factors which must be considered when making a custody determination, neither fact is dispositive.

■■■■ A custody determination cannot be based on bright-line rules, but must be made only after considering the totality of the circumstances of each case. In *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), the United States Supreme Court stated that "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Id.* at 495, 97 S.Ct. at 714. However, the Court went on to state that the somewhat coercive nature of being questioned by a potential adversary does not create the type of risk which warrants a *per se* requirement to issue *Miranda* warnings every time a suspect is questioned by a police officer in the station house. *Id.* Similarly, a suspect is not entitled to be read his or her *Miranda* rights simply because he or she is the "focus of an investigation." *Little v. Commonwealth*, 991 S.W.2d 141, 142 (Ky.App.1999). Rather, the pivotal requirement triggering an officer's duty to administer *Miranda* warnings is whether the environment has become so coercive as to induce reasonable persons to believe that (1) they are under arrest; or (2) they have "otherwise [been] deprived of [their] freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

In addition to the above considerations favoring Appellant's contention that he was in custody when he gave his initial statements to police, the trial court also found that (1) Jackson had the equivalent of a high school diploma and was familiar enough with the criminal justice system to fully understand what the detectives were asking him to do when they approached him at the courthouse, including the possible consequences of complying with the detectives' request; (2) Jackson was asked, not ordered, by the detectives to come to the police station that day and he freely and voluntarily agreed to do so; (3) Jackson freely and voluntarily accompanied the detectives to the police station without any kind of external restraints; and (4) Jackson testified at the suppression hearing that he was not threatened or physically coerced when he made his initial statements to Detective Wheeler. When all the circumstances are considered as a whole, the totality of the circumstances support the trial court's conclusion that Jackson was not in custody for the purposes of *Miranda* when he was first questioned by Detective Wheeler at the police station on March 19, 2005.

Since Jackson was not in custody at the time he made his initial incriminating statements to police, we do not believe the premises underlying the holding in *Missouri v. Seibert, supra,* are applicable to these facts. In *Missouri v. Seibert, supra,* a "question-first" protocol for custodial interrogations was struck down for the precise purpose that such a technique was coercive by design. *Id.* at 612–13, 124 S.Ct. at 2610–11. The Court reasoned that where incriminating statements are obtained in a coercive custodial environment and in express violation of a suspect's *Miranda* rights, any subsequent issuance and waiver of such rights must be closely scrutinized for effectiveness. *Id.* Such scrutiny

is unnecessary in a case such as this where the incriminating statements were not obtained in a coercive custodial environment or in violation of Jackson's *Miranda* rights. The purpose of *Miranda* warnings is to protect individuals from unduly coercive interrogation practices which disable them from making "free and rational choice[s]." *Id.* at 611, 124 S.Ct. at 2609–10. We are persuaded that Jackson was able to make free and rational choices when he was questioned by detectives in this case, and accordingly, we find no violation of his *Miranda* rights. The trial court's denial of Appellant Jackson's motion to suppress his statements is affirmed.

Appellants' convictions and sentences are vacated; and the cases are remanded to the Jefferson Circuit Court for further proceedings consistent with this opinion.

All concur as to Part I.

GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, J.J., concur as to Part II A.

GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, J.J., concur as to Part II B.

LAMBERT, C.J., dissents by separate opinion to Part II with COOPER, J., joining this dissent.

ROACH, J., dissents to Part II A.

Dissenting opinion by Chief Justice LAMBERT.

Respectfully, I must dissent from the majority's opinion.

I. Appellant Haydon

A. Appellant Haydon made at least three clear and unequivocal requests for a lawyer. A review of the exchange between Haydon and the investigators reveals that each and every time the investi-

gators mentioned Haydon's right to have an attorney present, he invoked such right. Nonetheless, the investigators claimed that, in context, the requests were ambiguous. This Court's majority has accepted this view despite the mandate of *Smith v. Illinois* that "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself."[1]

The instant case is virtually identical to *Smith*. If there is any distinction, it is that Haydon's request was even clearer and more unequivocal than Smith's. In *Smith* the investigator stated:

> You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?

Smith answered:

> Uh, yeah. I'd like to do that.

In the instant case, the investigator advised Haydon as follows:

> Okay. You have the right to talk to a lawyer prior to any questioning, or making any statements, and to have him present with you while you're being questioned.

Haydon responded:

> Yes, sir. Could I get a phone in here so I can talk to a lawyer?

In *Smith*, the U.S. Supreme Court held that the investigators were required to cease asking questions after Smith's above-quoted response even though he subsequently gave an equivocal response regarding counsel when the investigators pressed him on the issue. Likewise, the investigators in the instant case should have ceased asking questions following Haydon's above-quoted response and his statements thereafter should have been suppressed.

The majority attempts to avoid the bright line rule of *Smith* by relying on the Court's qualifying remark that "We do not decide the circumstances in which an accused's request for counsel may be characterized as ambiguous or equivocal as a result of events preceding the request or of nuances inherent in the request itself ...."[2] Its reason for not deciding was the clarity of Smith's request:

> Neither the State nor the courts below, for example, have pointed to anything Smith previously had said that might have cast doubt on the meaning of his statement "I'd like to do that" upon learning that he had the right to his counsel's presence. Nor have they pointed to anything inherent in the nature of Smith's actual request for counsel that reasonably would have suggested equivocation.[3]

The same is true here. Nothing in Haydon's conversation with the detectives prior to his request for counsel casts doubt on that request. Nor is there anything inherent in the nature of Haydon's request that would have suggested equivocation. He said, "Yes, sir. Could I get a phone in here so I can talk to a lawyer?" One must wonder where the nuance, ambiguity, or equivocation is in Haydon's statement.

B. I would not reach the issue of the voluntariness of Haydon's statement because he had already requested legal counsel. Nor would I remand Haydon's case to the trial court for a determination of whether the interrogation was in violation of *Missouri v. Seibert*,[4] wherein the "question first" technique of interrogation was

---

1. *Smith v. Illinois*, 469 U.S. 91, 100, 105 S.Ct. 490, 495, 83 L.Ed.2d 488 (1984).

2. *Id.* at 99–100, 105 S.Ct. 490.

3. *Id.* at 96–97, 105 S.Ct. 490.

4. 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

denounced. I observe, however, that this unconstitutional interrogation technique appears to have been fully utilized here. Thus, even if one believes that there was no request for counsel, a constitutional violation occurred by use of the "question first" technique.

## II. Appellant Jackson

At the time Jackson was approached by the police he was in the Jefferson District Court to appear on a traffic charge. In the Hall of Justice, three armed police detectives approached Jackson and informed him that his name had arisen in the course of an investigation. Jackson was escorted by the three detectives across the street to the police station for interrogation. Jackson was led to an interrogation room and left alone for ten to fifteen minutes before one of the detectives returned and began questioning him. Jackson was never told that he was not under arrest, that he did not have to speak, or that he could leave at anytime. In other words, no explanation of rights was given. Despite these facts, the majority has affirmed the trial court's conclusion that Jackson was not in custody at the time of his interrogation. The majority contends that he was free to leave at any time and was not entitled to Miranda warnings.

In my judgment, this flies in the face of rationality. Even a sophisticated, well-educated, mature adult would find such circumstances deeply intimidating and would perceive a restriction on his liberty. But to suggest that a twenty-year-old ninth-grade dropout, who was a veteran of juvenile camp where he obtained a GED, would imagine that he had a right to leave or refuse questioning is pure sophistry. If the Fifth Amendment and the rights acknowledged in *Miranda v. Arizona*[5] mean anything, at a minimum, they should apply in this case.

Our decision in *Commonwealth v. Whitmore*[6] binds appellate courts to trial court findings of fact on suppression issues, but we are not so bound by the legal conclusions drawn therefrom. I have no quarrel with the facts as found by the trial court, but the trial court's conclusion and the conclusion of the majority herein are not reasonable under the facts. We should take this opportunity to denounce unconstitutional police interrogation practices and reaffirm that the spirit of *Miranda* will be applied in Kentucky courts.

COOPER, J., joins this dissenting opinion.

ROACH, J., joins part I.A. of this dissenting opinion.

---

**5.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

