RENDERED: MAY 30, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1449-MR

BOBBY GILLIARD                                                                                   APPELLANT

v.
APPEAL FROM MADISON CIRCUIT COURT
HONORABLE KRISTIN CLOUSE, JUDGE
ACTION NOS. 20-CR-00316 AND 20-CR-00317

COMMONWEALTH OF KENTUCKY                                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, KAREM, AND LAMBERT, JUDGES.

ACREE, JUDGE: Appellant Bobby Gilliard appeals the Madison Circuit Court's final judgment and order denying his motion to suppress evidence. We affirm.

## BACKGROUND

On April 22, 2020, Officers Kirstein and Hess of the Richmond Police Department and Deputy Thompson of the Madison County Sheriff's Office were investigating suspected drug trafficking at a Days Inn in Richmond, Kentucky. Officer Kirstein observed a dark blue Chevrolet Tahoe parked in front of Room

116 that was believed to be associated with drug dealing. Additionally, he had received information from a Days Inn employee that several visitors had gone in and out of Room 116.

Based upon this information, Deputy Thompson brought his drug-detection dog (Kash) to the Days Inn. Before making contact with the room's occupants, Deputy Thompson ran his dog by the door of Room 116 and Kash alerted to the presence of narcotics.

Sergeant Kirstein knocked on the door and the room's registered guest, Candy Wright, opened the door to reveal Appellant Bobby Gilliard inside, lying on a bed. Sergeant Kirstein told Wright why they were there.

Wright consented to a search of the room. In the bathroom, officers located syringes in plain view. In the motel-room safe, 13 grams of an off-white powder were found.[1] In addition, Sergeant Kirstein found a bottle of Mannitol – a common cutting agent – and scales with suspected narcotics residue.

Gilliard was charged with first-degree drug trafficking (three counts), possession of drug paraphernalia, and being a first-degree persistent felony offender. Gilliard moved to suppress the evidence, claiming the dog sniff outside his motel room violated the Fourth Amendment. The trial court denied his motion,

---

[1] The powder was subsequently determined to be a mixture of heroin, acetyl fentanyl, and fentanyl.

finding the exterior walkway was not a constitutionally protected area and Gilliard therefore had no reasonable expectation of privacy there.

Gilliard entered a conditional guilty plea to the three counts of first-degree drug trafficking and possession of drug paraphernalia charge. He appeals the trial court's denial of his motion to suppress evidence.

## ANALYSIS

**I.     The trial court properly denied Gilliard's motion to suppress evidence**.

When reviewing a trial court's denial of a motion to suppress, we utilize clear error standard of review of factual findings and a *de novo* standard of review for conclusions of law. *Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citations omitted).

Unreasonable searches and seizures are prohibited by Fourth Amendment of the United States Constitution, which provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The critical question in a Fourth Amendment analysis is whether a person has a "constitutionally protected reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring).

To support his contention that a motel guest is entitled to a reasonable expectation of privacy, Gilliard first directs us to *Connecticut v. Correa*, an opinion from the Supreme Court of Connecticut. 264 A.3d 894 (Conn. 2021). We find *Correa* inapplicable to the case at bar for two primary reasons.

First, and most importantly, *Correa* interprets article first, § 7, of the Connecticut constitution – Connecticut's version of the Fourth Amendment. While courts in Connecticut "employ[] the same analytical framework that would be used under the federal constitution" for claims of article first, § 7, violations, the inverse is not necessarily mandated. *Id*. at 639. We specifically note slight variations in verbiage between the two provisions. *Compare* U.S. CONST. amend. IV, *supra*, *with* CONN. CONST., art. I, § 7 ("The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."). To avoid applying a state's interpretation of its own constitution and hence its jurisprudence to the federal Constitution, we decline to find persuasive value in *Correa*. We instead turn our focus to cases interpreting the United States Constitution.

Second, in reaching its conclusion that a dog sniff outside a motel room door is a search subject to the protections of article first, § 7, the *Correa*

court relied chiefly on *Connecticut v. Kono*, a case involving a warrantless dog sniff outside the door of a condominium unit inside a locked, keypad-restricted complex. 152 A.3d 1, 5 (Conn. 2016). As we explain below, the differences between such a restricted-access residential complex and the unrestricted, open-air motel walkway, easily accessible by the public from the parking lot make the Connecticut cases inapposite.

Guests in hotel rooms are entitled to constitutional protection against unreasonable searches and seizures. *Stoner v. California*, 376 U.S. 483, 490 (1964). However, while "an individual's Fourth Amendment rights do not evaporate when he rents a motel room, the extent of the privacy he is entitled to reasonably expect may very well diminish." *United States v. Agapito*, 620 F.2d 324 (2d. Cir.), *cert. denied*, 449 U.S. 834 (1980). The Second Circuit explained the difference is rooted in the "transitory nature" of motels:

> Unlike an apartment or a room in a boarding house, hotels and motels are not ordinarily considered places where one lives and keeps personal effects. In addition, service personnel in hotels and motels have keys to enter and make-up the rooms, remove dishes, check air-conditioning, heating and the like. Former occupants may even have retained a key to a hotel room . . . . In short, it is the transitory nature of such places, commonly understood as such, that diminishes a person's justifiable expectation of privacy in them.

*United States v. Mankani*, 738 F.2d 538, 544 (2d. Cir. 1984).

Gilliard also relies on *Florida v. Jardines*, wherein the Supreme Court of the United States was required to determine whether a warrantless canine sniff on the front porch of a house violates the Fourth Amendment. 569 U.S. 1 (2013). Finding a front porch to be the "classic exemplar" of a home's curtilage entitled to protection as part of the home itself, the Court deemed a canine sniff under such circumstances to be an illegal search. *Id.* at 6-7.

We must again note the critical distinction between an open-air motel and one's own residence. Unlike the homeowner in *Jardines*, Gilliard was merely an overnight guest of a motel's registered occupant or lessee of one of the motel owner's rooms. Neither Gilliard nor Wright possessed any constitutional right to exclude persons from the walkway area where Kash alerted. *Jardines* is a case decided under the "property-based approach" governing whether officer conduct amounts to a search rather than the "privacy-based approach[.]" *United States v. Lewis*, 38 F.4th 527, 533 (7th Cir. 2022).

"Under the property-based approach, a search occurs when an officer enters a constitutionally protected area, such as the home, for the purpose of gathering evidence against the property owner." *Id.* Because neither the human nor the canine officer entered a constitutionally protected area, there was no search and, therefore, no illegal search. *Id.* (citing *Jardines*, 569 U.S. at 6). By analogy, "a plain view observation made by a police officer from a position where the

officer is entitled to be is not a 'search' within the meaning of the Fourth Amendment. Consequently, the restrictions of the Fourth Amendment are not applicable." *United States v. Johnson*, 506 F.2d 674, 675 (8th Cir. 1974) (citing *Harris v. United States*, 390 U.S. 234, 236 (1968)).

The same result emerges under a privacy-based approach. In *United States v. Lewis*, *supra*, a K-9 handler walked a drug detection dog up the exterior staircase of a Red Roof Inn, along the second-floor exterior hallway, and to a room believed to be occupied by the defendant. The dog alerted outside the door to the room. The defendant sought to suppress the contraband found inside the motel room, but, based on these facts, strikingly similar to those before us, the Seventh Circuit determined that a warrantless dog sniff in an exterior motel hallway was not an unreasonable search. *Id.* Under the privacy-based approach, the *Lewis* court concluded that since a motel guest "undoubtedly gives implied or express permission to such persons as maids, janitors or repairmen to enter his room in the performance of their duties[,] . . . it is hard to see how guests at the Red Roof Inn could reasonably expect to be free of dog sniffs in the exterior hallway." *Id*. at 536 (internal quotation marks omitted).

Relying on these principles, we conclude Gilliard, as an overnight motel guest, did not have a reasonable expectation of privacy from a warrantless

dog sniff in the public hallway outside the motel room door. We accordingly affirm the trial court's denial of his motion to suppress.

## II.    The trial court properly levied court costs.

Gilliard claims the trial court erred in levying court costs to be paid within six months of release from custody. He concedes this issue is unpreserved. As such, we review for palpable error under RCr[2] 10.26: "A palpable error which affects the substantial rights of a party may be considered by . . . an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error."

If a person is adjudged to be "poor," the court cannot assess court costs in a judgment fixing sentencing. *Spicer v. Commonwealth*, 442 S.W.3d 26, 36 (Ky. 2014). However, "[i]f a trial judge was not asked at sentencing to determine the defendant's poverty status and did not otherwise presume the defendant to be an indigent or poor person before imposing court costs, then there is no error to correct on appeal." *Id*. at 35.

Gilliard did not ask for court costs to be waived. Nor did he request the court to make a finding that he was a poor person. Other than being represented by a public defender and the record reflecting he was permitted to

---

[2] Kentucky Rules of Criminal Procedure.

proceed on appeal *in forma pauperis*, there was no determination of Gilliard's financial status. And, as *Spicer* instructs, "[a] defendant who qualifies as 'needy' under KRS[3] 31.110 [addressing inability to provide for the payment of an attorney] because he cannot afford the services of an attorney is not necessarily 'poor' under KRS 23A.205 [exempting a person who is unable to pay court costs]." *Id.* (citation omitted). As in *Spicer*, the fact Gilliard was represented by a public defender is insufficient basis for concluding he was entitled to an exemption from court costs, particularly where no request was made at sentencing. We find no error and affirm the imposition of court costs.

## <u>CONCLUSION</u>

For the aforementioned reasons, we affirm the Madison Circuit Court's final judgment and order denying suppression.

ALL CONCUR.

BRIEF FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky

---

[3] Kentucky Revised Statutes.