RENDERED:  MARCH 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2024-SC-0539-MR

MICHAEL GIBBS                                                      APPELLANT

V.

ON APPEAL FROM HOPKINS CIRCUIT COURT
HONORABLE CHRISTOPHER BRYAN OGLESBY, JUDGE
NO. 22-CR-00129

COMMONWEALTH OF KENTUCKY                                 APPELLEE

**OPINION OF THE COURT BY JUSTICE GOODWINE**

**<u>AFFIRMING</u>**

A Hopkins County jury convicted Michael Gibbs of first-degree rape of a child under twelve years old; incest with a child under twelve years old; second-degree rape of a minor under fourteen years old; second-degree unlawful transaction with a minor; two counts of possession of matter portraying a sexual performance by a minor; first-degree sexual abuse; distribution of matter portraying a sexual performance by a minor; and two counts of promoting a sexual performance by a minor.[1] The jury also found him guilty of being a second-degree persistent felony offender (PFO). The Hopkins Circuit Court sentenced him to the jury's recommended sentence of

---

[1] The jury acquitted Gibbs on the charge of distribution of obscene material to minors.

life imprisonment. Gibbs appeals to this Court as a matter of right. KY. CONST. § 110(2)(b). We affirm.

## BACKGROUND

In March 2022, twelve-year-old Jane[2] reported to the Madisonville Police Department that, on a day in February 2022, Gibbs gave her marijuana and engaged in sexual intercourse with her. She told police she was concerned she was pregnant as a result of the intercourse with Gibbs. She knew Gibbs because he was the father of her friend, Alice.

Based on Jane's report, police went to Gibbs' home to speak to him. An officer knocked on his door, but Gibbs did not immediately answer. When he answered the door, Gibbs was wearing only his underwear and had an obvious erection. Through the doorway, the officer observed eleven-year-old Alice, clothed in only a large t-shirt, hurrying out of the primary bedroom as Gibbs answered the door. Once inside the home, an officer observed a camera at the foot of Gibbs' bed in his primary bedroom. Later, police recovered multiple cameras from his bedroom.

While at the home, an officer attempted to talk to Alice, but she began to cry and refused to speak to him. However, she later disclosed that Gibbs sent her text messages instructing her to perform sexual acts on camera for him to watch when he was not at home. He also engaged in sexual intercourse with

---

[2] Pursuant to Kentucky Rules of Appellate Procedure (RAP) 7(B), we refer to the juvenile victims in this case by pseudonyms –Jane, Alice, and Anne– to protect their privacy.

her. She felt she had no choice but to comply because Gibbs threatened to hurt her.

Through their investigation, police also discovered a third victim, Anne. Anne, who was then ten years old, was also a friend of Alice. She visited Alice at the home where she lived with Gibbs and other family members. When she once spent the night with Alice, the two girls slept in Gibbs' bed because he was supposed to be at work all night. She fell asleep with her pants on but woke up with her pants off and Gibbs touching her vagina.

During their investigation, police extracted data from both Gibbs' and Alice's cellphones. They recovered messages from Gibbs to Alice describing the sexual acts he wanted to engage in with her and instructing her to engage in sex acts for him to watch on video. They also found photos of Alice and Anne in only pants and bras, Jane's face and breast, and Anne's vagina on Gibbs' cellphone.

Prior to trial, Gibbs moved to sever the counts in the indictment pertaining to each of the three victims. The trial court held a hearing on the motion. The court denied the motion finding a common scheme or plan because the victims were close in age and were all friends. The offenses all occurred in Gibbs' bedroom within the same year. The court also found it would be difficult to try the charges separately and Gibbs would not be unduly prejudiced under the circumstances.

The Commonwealth then moved to continue the trial because Alice was not adequately prepared to testify because she was undergoing intensive

trauma therapy. The trial court granted the continuance. The Commonwealth later requested Alice, who was then fourteen years old, be allowed to testify under KRS[3] 421.350. At a hearing on the motion, Alice's mental health therapist testified to diagnosing Alice with post-traumatic stress disorder (PTSD) because of her father's sexual abuse. The therapist opined that Alice would be unable to testify in Gibbs' presence because of her trauma response to him. Evidence also showed Alice's cognitive function was akin to that of a younger child due to developmental delays. This meant that Alice struggled with narration, including recalling and explaining details.

The trial court granted the Commonwealth's motion over Gibbs' objection and allowed Alice to testify by closed circuit television from another room in the courthouse. The court based its decision on Alice having been under the age of twelve at the time Gibbs committed the offenses against her. The court balanced Gibbs' right to confront the witnesses against him and Alice's welfare, and held, considering the totality of the circumstances, that Alice could testify from outside the courtroom.

Gibbs then requested a hearing on Alice's competency. Alice testified through closed circuit television at the hearing about her age, grade level, and her understanding of truthfulness. After Alice's testimony, Gibbs' counsel conceded she was competent to testify. The trial court agreed and so ruled.

---

[3] Kentucky Revised Statutes.

A three-day jury trial then commenced. Four members of law enforcement who were involved in the investigation, a Sexual Assault Nurse Examiner who examined Alice, and the three victims testified. Gibbs did not testify. The jury ultimately convicted Gibbs of first-degree rape of a child under twelve years old; incest with a child under twelve years old; second-degree rape of a minor less than fourteen years old; second-degree unlawful transaction with a minor; two counts of possession of matter portraying a sexual performance by a minor; first-degree sexual abuse; distribution of matter portraying a sexual performance by a minor; two counts of promoting a sexual performance by a minor; and being a second-degree PFO. Upon the recommendation by the jury, the trial court sentenced Gibbs to life imprisonment. This appeal followed.

## ANALYSIS

On appeal, Gibbs argues: (1) the trial court erred by denying his motion to sever the counts related to each victim; and (2) the trial court erred by allowing Alice to testify by closed circuit television.

We review a trial court's decisions on both severance and motions under KRS 421.350 for abuse of discretion. *Jackson v. Commonwealth,* 187 S.W.3d 300, 303 (Ky. 2006); *Danner v. Commonwealth,* 963 S.W.2d 632, 634-35 (Ky. 1998).

First, the trial court did not abuse its discretion by denying Gibbs' motion to sever. Gibbs argues the dissimilarities among the facts alleged in the

testimony of the three victims are so significant as to necessitate severance. We disagree.

Joinder of offenses prevents waste of judicial resources and avoids the burden of multiple trials on courts, parties, witnesses, and victims. *Peacher v. Commonwealth*, 391 S.W.3d 821, 836 (Ky. 2013). Joinder is allowed "if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan." RCr[4] 6.18. "If it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses . . . in an indictment, information, complaint or uniform citation or by joinder for trial, the court shall order separate trials of counts . . . or provide whatever other relief justice requires." RCr 8.31. "Because a defendant is prejudiced simply by being tried at all, a defendant is required to show prior to trial that he would be 'unfairly prejudiced' by a joinder." *Garrett v. Commonwealth*, 534 S.W.3d 217, 223 (Ky. 2017) (quoting *Parker v. Commonwealth*, 291 S.W.3d 647, 656-57 (Ky. 2009). We will affirm a trial court's decision on severance unless we are clearly convinced that actual prejudice occurred. *Elam v. Commonwealth*, 500 S.W.3d 818, 822-23 (Ky. 2016).

To determine if joinder is appropriate, a trial court must consider whether there is "a sufficient nexus between or among [the offenses] to justify a single trial." *Peacher*, 391 S.W.3d at 837. Such a nexus may exist "where the

---

[4] Kentucky Rules of Criminal Procedure.

separate crimes are parts of a common scheme or plan[.]" *Id.* While closeness in time and space is relevant, a common scheme or plan arises "from a logical relationship" among the offenses. *Id.* (internal quotation marks omitted). This Court has found such a logical relationship exists where disclosure of offenses against one victim led to the discovery of offenses against another. *Elam,* 500 S.W.3d at 825.

Despite Gibbs' attempt to distinguish his crimes against the three victims from one another, we are convinced that Gibbs pursued a common scheme or plan "to obtain sexual gratification by engaging in sexual acts with easily accessible and vulnerable victims[.]" *Elam,* 500 S.W.3d at 825. While he did not commit identical sexual crimes against the three victims, there are sufficient similarities to show a common scheme. The three victims were minors of similar ages. Gibbs had access to Jane and Anne because they were Alice's only friends. All the offenses occurred within the same year and in Gibbs' bedroom. Gibbs sought and retained photos of a sexual nature of each of the girls. Also, as occurred in *Elam,* Jane's disclosure of Gibbs' crimes against her led to the discovery of his crimes against Alice and Anne. Based on the evidence, a logical relationship exists among the offenses, and the trial court did not abuse its discretion by denying Gibbs' motion.

Second, the trial court did not abuse its discretion by allowing Alice to testify via closed circuit television. KRS 421.350 applies in the prosecution of offenses including incest, "when the act is alleged to have been committed against a child twelve (12) years of age or younger, and applies to the

7

statements or testimony of that child or another child who is twelve (12) years of age or younger who witnesses one of the offenses included in the subsection." KRS 421.350(1). The trial court may, "on the motion of the attorney for any party and upon a finding of compelling need, order that the testimony of the child be taken in a room other than the courtroom and be televised by closed circuit equipment in the courtroom to be viewed by the court and finder of fact in the proceeding." KRS 421.350(2).

First, Gibbs argues KRS 421.350 is inapplicable to Alice's testimony because she was fourteen years old at the time of trial. Specifically, he takes issue with the trial court's reliance on *Danner* to find that Alice could testify by closed circuit television because she was under twelve years old when the crimes occurred, and she was still a minor at the time of trial. 963 S.W.2d at 634. He argues *Danner* has effectively been overruled by this Court's more recent decisions in *Walker v. Commonwealth*, 548 S.W.3d 250 (Ky. 2018), and *Sparkman v. Commonwealth*, 250 S.W.3d 667 (Ky. 2008).

In *Danner*, the child, a victim of sexual abuse, was between five and ten years old when the crimes occurred but was fifteen at the time of trial. 963 S.W.2d at 633. When presented with the same question Gibbs now poses, this Court found KRS 421.350(1) ambiguous. *Id.* at 634. The Court reasoned, "[o]ne portion clearly refers to the age of the victim when the act is committed, but another portion refers to the age of the victim when the testimony is given. The statute assumes the age will be the same, but in fact, it often will not." *Id.* The Court held the protections of KRS 421.350 applied to child-victims who were

8

twelve years old or younger when the crimes occurred so long as they were still children at the time of trial because the legislative intent of the statute was to protect such children. *Id.* (footnote omitted). The Court found this intent would be undermined if a child who was under twelve when crimes were committed against her was denied the protections of the statute simply because she turned thirteen prior to trial. *Id.*

Ten years later, this Court decided *Sparkman*. However, we were not presented with a similar question regarding the applicability of KRS 421.350 to the testimony of older children, as the child-witnesses were 12 and 10 years old at the time of trial. *Sparkman*, 250 S.W.3d at 668. Instead, Gibbs' argument for the case's applicability relies on a single statement: "KRS 421.350 provides that upon a showing of compelling need, a trial court may allow a child twelve years old or younger to testify via closed circuit broadcast or videotape outside the presence of the accused." While this may be an incomplete summation of this Court's interpretation of the statute in light of *Danner*, it is in no way an overruling of that decision. Considering that the finding of a compelling need, rather than the age of the child, was at issue in *Sparkman*, we are unconvinced by Gibbs' assertion that it overruled *Danner*.

In 2018, this Court was again presented with the question of whether KRS 421.350 provides protections for children who are over the age of twelve when they testify. In *Walker*, the victim was between seven and eight years old when she was sexually assaulted by the defendant, but was seventeen at the time of trial. 548 S.W.3d at 251-252. At trial, the victim began to testify in the

9

courtroom in view of the defendant but became upset. *Id.* at 252. After a recess for her to regain her composure, the trial court granted the Commonwealth's request to use a television cart to block the defendant's direct line of sight to the victim. *Id.* The defendant argued, and this Court agreed that this violated KRS 421.350. The entirety of the Court's analysis reads, "KRS 421.350 only applies to child witnesses who are twelve years old or younger. *See Sparkman v. Commonwealth*, 250 S.W.3d 667, 669 (Ky. 2008). [Victim] was seventeen at the time she testified. Therefore, KRS 421.350 is inapplicable." *Id.*[5]

Gibbs argues this effectively overrules *Danner*. We disagree. Like the statement in *Sparkman*, we find this brief analysis inaccurate as it does not consider *Danner*. We now overrule *Sparkman* and *Walker* to the extent that they conflict with *Danner*. We reaffirm our interpretation from *Danner* which allows children to testify under the protections of KRS 421.350 if the crimes were committed when they were twelve years old or younger, even if they are over the age of twelve at the time of trial, but still a child.

Finally, Gibbs argues the Commonwealth did not prove a compelling need for Alice to testify outside his presence. Gibbs takes issue with the fact that Alice did not testify at the hearing on the Commonwealth's motion under KRS 421.350(2). Instead, the Commonwealth presented only the testimony of Alice's mental health therapist.

---

[5] Considering that the victim in *Walker* testified in the courtroom, KRS 421.350 was ultimately inapplicable. The Court then found the circuit court did not abuse its discretion by allowing the television cart to obstruct the defendant's line of sight under KRS 26A.140(1)(d). *Id.*

10

"[C]ompelling need is defined as the substantial probability that the child would be unable to reasonably communicate because of serious emotional distress produced by the defendant's presence." KRS 421.350(5). The trial court has broad discretion in deciding whether a compelling need exists. *Danner*, 963 S.W.2d at 634. However, the court should consider the child's age and the time which has elapsed from the crime to the date of trial when reaching this decision. *Id.* Gibbs cites to no authority to support his assertion that the child must always testify at the hearing on a KRS 421.350(2) motion. He also did not make this specific argument during the hearing or in his written response to the Commonwealth's motion.[6] Even if he had raised the argument, the court's reliance on the testimony of Alice's mental health therapist was not erroneous.

The therapist testified that Alice suffered from post-traumatic stress disorder (PTSD) as a result of Gibbs' sexual abuse. She also testified that Alice suffered from developmental delays which caused her to function like a younger child in terms of emotional intelligence and reasoning, which hinders her "ability to narrate." She testified that Alice would likely struggle to testify in Gibbs' presence because seeing him would "trigger an anxiety trauma response" which could cause "emotional distress to the point that she might not be able to think clearly" or concentrate on what is being asked of her. This

---

[6] When the Commonwealth informed the court that Alice was not present due to a miscommunication with her foster family and asked if the court would prefer to reschedule the hearing, Gibbs' counsel told the court that he did not expect Alice to testify, and the hearing proceeded with only the mental health therapist's testimony.

11

evidence is sufficient to support the trial court's determination that Alice would have been unable to reasonably communicate due to emotional distress in Gibbs' presence. Furthermore, like the trial court in *Danner*, the court in this case did not base its decision on Alice's comfort, but rather on its concern that she would not be able to communicate or disclose her testimony to the jury while in Gibbs' presence.

Therefore, the trial court did not abuse its discretion by finding KRS 421.350 applied to Alice's testimony or by allowing her to testify via closed-circuit television pursuant to the statute.

## CONCLUSION

Based on the foregoing, the judgment of the Hopkins Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General