Raymond KREPS, Appellant,

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2007–SC–000814–MR.

Supreme Court of Kentucky.

June 25, 2009.

Shelly R. Fears, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Gregory C. Fuchs, Assistant Attorney General, Office of Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice ABRAMSON.

Raymond Kreps appeals as a matter of right from an October 16, 2007 Judgment of the Graves Circuit Court convicting him of two counts of rape in the second degree

and two counts of rape in the third degree and sentencing him to five years on each count to run consecutively for a total of twenty years in prison. The Commonwealth alleged and the jury found that on four different occasions from January 2005 till June 2005, Kreps had sex with a minor child, A.S., who became fourteen years old in February 2005. Kreps alleges on appeal that the trial court erred by (1) permitting the Commonwealth to introduce his taped police statement, which was made in the course of plea discussions and was inadmissible per KRE 410; (2) allowing evidence of his two prior felony convictions and his two pending charges in Livingston County to be introduced via the aforementioned recorded statement; and (3) failing to conduct a hearing to determine the admissibility of A.S.'s prior false allegation of sexual misconduct against another individual. Convinced that Kreps's taped police statement was made in the course of plea discussions with an attorney for the prosecuting authority and should have been excluded per KRE 410, we reverse Kreps's convictions and remand for a new trial.

### RELEVANT FACTS

In July 2004, Kreps, who was thirty-eight years old at the time, and his new wife, Renee, allowed thirteen-year-old A.S. to move into their residence in Fulton, Kentucky. Renee Kreps had previously been married to A.S.'s grandfather and had remained close to A.S. and A.S.'s mother, Terra Anderson, even after the death of Terra's father two years previously. During the summer of 2004, Renee learned from Terra that A.S. was "out of control" and agreed to be a guardian for A.S. so that she could have a more stable environment. Seven months after A.S. began living with Renee and Raymond Kreps, in February 2005, Renee was involved in a serious car accident and had to be transferred to the Oakview Rehabilitation Center indefinitely in order to recover from her injuries. A.S. continued to live with Kreps after Renee's accident, and she continued to see her mother, Terra, frequently.

Approximately a year after A.S. began living with Kreps, on July 1, 2005, Amy Timmons, a social worker, received information from an anonymous caller that fourteen-year-old A.S. was pregnant due to her sexual relationship with Kreps. Timmons then contacted Kelly Drew of the Graves County Sheriff's office, and the two traveled to Kreps's residence to conduct an interview. Although no one was home initially, Timmons and Drew learned from Dennis Gibbs, who pulled into the driveway as they were about to leave, that Renee Kreps was still at the rehabilitation center and A.S., A.S.'s mother, and Kreps were currently at Kreps's houseboat in Green Turtle Bay. Gibbs also told Timmons and Drew that he had been living with Kreps since his wife's car wreck and that he was now romantically involved with Kreps.

Soon after receiving this information, Timmons and Drew interviewed Renee Kreps at the rehabilitation center. Renee confirmed that A.S. had been staying with them since July 2004, that A.S. continued to see her mother regularly, and that she did not believe there was an inappropriate relationship between Kreps and A.S. On July 12, 2005, Timmons and Drew traveled to Green Turtle Bay and conducted three separate, individual interviews with Kreps, A.S., and Terra at Kreps's houseboat. All three denied that a sexual relationship existed between A.S. and Kreps and that A.S. was pregnant.

Following these initial interviews, A.S. and her mother left Kreps's houseboat and began staying with Jeff and Dallas Fed-

ders, who were Terra's neighbors and family friends. In a later police interview, Terra stated that once she and A.S. were at the Fedderses, she and Dallas made A.S. take a pregnancy test, but then deceived A.S. into believing that she was pregnant so she would admit the truth about her relationship with Kreps.[1] Terra stated that A.S. eventually admitted that she had had sex with Kreps and that she had previously lied about it. However, after Terra told A.S. that she would have to report Kreps and after A.S. discovered that she was not pregnant, A.S. insisted that she had only admitted to having sex with Kreps because her mother and Dallas would not leave her alone and were threatening her.

The Fedderses eventually notified the McCracken County Sheriff's office about this incident, which led to Officer Drew conducting a second interview of A.S. and Terra on July 21, 2005. It was during this second interview that Terra revealed her involvement in giving A.S. a fake pregnancy test and in getting A.S. to admit that she had had sex with Kreps. During A.S.'s interview, she initially denied that she had had sex with Kreps, but eventually, after Officer Drew questioned her further, brokedown and admitted that she and Kreps did have a sexual relationship. At the end of this interview, A.S. made a written statement detailing four instances when she and Kreps had sex during the period from January 2005 till June 2005.

Two weeks later, on August 4, 2005, Kreps voluntarily went to the Graves County Sheriff's office in order to answer questions regarding his relationship with A.S. Officer Drew and Kentucky State Police Officer George Bell conducted Kreps's interview, a tape of which was played for the jury during Kreps's trial. During this interview, Kreps eventually confessed to having sexual intercourse with A.S., admitting that they had sex on the den floor of his residence, in a van a couple of miles away from his residence, and in his truck while it was parked in his driveway. Kreps explained that A.S. was "fourteen going on thirty-one" and that she had been coming on to him since she moved into his residence.

On October 27, 2005, the grand jury returned an indictment charging Kreps with two counts of rape in the second degree (Class C felony) for engaging in sexual intercourse with A.S. in January and February 2005, when A.S. was thirteen years-old, and two counts of rape in the third degree (Class D felony) for engaging in sexual intercourse with A.S. in May and June 2005, when A.S. was fourteen years-old. Kreps pled not guilty to these charges, and his trial began on July 10, 2007. At trial, the Commonwealth relied on the testimonies of Amy Timmons, Officer Drew, Officer Bell, and A.S. A.S. testified that when she moved in with Renee and Kreps, she started flirting with Kreps and he eventually flirted back. She stated that after several months, she and Kreps began having a sexual relationship. She revealed that the first time they had sex was when Renee had left in the early morning to commence her paper route. A.S. acknowledged that she had a crush on Kreps and that she had wanted to sleep with him, but also admitted that now, she understood it was inappropriate for Kreps

---

1. There are conflicting statements in the record as to whether Terra or Dallas—or both— were pregnant at the time they gave A.S. a pregnancy test. Regardless, it was not A.S.'s urine that produced a positive result on the pregnancy test and these women kept that fact from A.S. so she would admit the truth about her sexual relationship with Kreps. Terra stated that the police had suggested she conduct this fake test so that A.S. would admit the truth.

have sex with her. A.S. also testified that she did not get along with Dennis Gibbs because she was protective of Kreps and his time with her.

In response, the defense relied on the testimony of Kreps and Dennis Gibbs. Gibbs testified that A.S. had a crush on Kreps and constantly behaved inappropriately around him. Gibbs also stated that he and A.S. did not get along because he disapproved of her behavior towards Kreps and because he was the disciplinarian of the house. Kreps testified that he notified A.S.'s mother of A.S.'s inappropriate sexual advances several times, including the instance where A.S. got into bed with him in the middle of the night and where she walked in front of him naked. But Kreps stated that Terra simply laughed it off and did not take it seriously. Kreps also testified that during the summer of 2005, while the police were investigating the allegations, Terra and the Fedderses had threatened him with blackmail unless he gave them his houseboat, his business, and the money he received from his wife's accident settlement. Kreps claimed that he only confessed to having sex with A.S. because he felt like at that point, it did not matter what he told the police. Kreps insisted at trial that he never had sex with A.S. On July 12, 2007, the jury found Kreps guilty of all charges and recommended a sentence of five years on each count for a total sentence of twenty years. This appeal followed.

### *ANALYSIS*

**I. Because Kreps's Statement Was Made In the Course of Plea Discussions, the Trial Court Committed Reversible Error By Admitting It At Trial.**

Prior to trial, Kreps moved to suppress his taped police statement, arguing that it was inadmissible because it was not given voluntarily and because it was made during the course of a plea discussion with the prosecutor and prohibited by KRE 410. In its order denying this motion, the trial court acknowledged that the interrogating officers told Kreps that "they couldn't promise anything, but they could relate the fact of his cooperation, and they could make recommendations to the prosecutor's office." With no further discussion of KRE 410 and its prohibition on statements made in the course of plea discussions, the trial court concluded that because Kreps's statements were made voluntarily, his taped confession was admissible. On appeal, Kreps alleges that this ruling constitutes reversible error because KRE 410 mandates the exclusion of his statement. We agree.

During Kreps's interview, Graves County Police Officer Drew initially informed Kreps that he could not promise him anything specific because he was not the prosecutor in this case. Kreps countered that he was willing to work with Officer Drew and Kentucky State Police Officer Bell and asked if they could "talk to the County Attorney and see what kind of deal we can make." Officer Drew eventually informed Kreps that in Graves County, Kreps was facing four Class C felonies, which could result in five to ten years imprisonment on each count. In pleading with the officers to reduce his felonies to misdemeanors, Kreps stated:

> If you guys talk [the prosecutor] into a felony—I'm gonna run it all the way up to the court and hope for the best ... I ain't got no choice ... You want me to cop to a misdemeanor and talk probation ... I'll give you that. But that's as far as I can go.... Help me out, help a dying man out.

Subsequently, after Officer Drew tried to contact the prosecutor on the phone but was unable to reach him, he told Kreps

that he knew the prosecutor would reduce his charges to at least Class D felonies and would possibly run his sentences concurrently or allow him to do "county time." However, Officer Drew also informed Kreps that "those are things that are beyond our control right now because [the prosecutors] are not here and they're ultimately gonna be the ones that make the decision."

Officer Drew then spoke with the Commonwealth's Attorney on the phone and informed him that Kreps was "willing to write out a statement or give a confession" in exchange for a deal. Officer Drew reviewed Kreps' criminal history with the prosecutor. Following the phone conversation, which occurred in Kreps's presence,[2] Officer Drew told Kreps that the prosecutor "was offering a little bit" but had "refused to reduce any of [the charges] to a misdeameanor ... primarily just because of the nature of these particular offenses." Kreps expressed concern that because of his prior convictions, another felony would be his third offense, resulting in an automatic five years. Officer Drew then informed Kreps that the Commonwealth's Attorney "did not have a problem with reducing the Class C felonies to Class D and running them concurrently." In response, Kreps said he was looking for the "best deal" he could get. He inquired if Class D was the lowest level of felony. Officer Drew replied, "Yes. It's just above a Class A misdemeanor." Kreps then asked, "OK, say I give you what you want. When do I see a judge?" Officer Drew replied that Kreps could see a judge that afternoon and that he could post bond.

Kreps then informed the officers that he had incriminating information about A.S.'s mother, Terra Anderson, and asked whether he should reveal it now or save it for later. Kreps stated, "I'll tell you the deal I'm looking for: one year or less in the county—I'll take the rest on paper. Ill go five years on paper if that's what you want." Officer Drew replied that Kreps's attorney would have to work that out for him later based on the information he could provide about Terra Anderson. Kreps then went to smoke a cigarette. When he returned, he told Officer Drew, "I think you're gonna go to bat for me and try to work this out for me ... All right, let's get this over with ... I will confess to having consensual sex with A.S., age fourteen, and will admit to the four counts I'm being charged with." Despite Officer Drew's statement that the Commonwealth's Attorney was willing to reduce the Class C felonies to Class D, Kreps was indicted for two Class C felonies and two Class D felonies.

KRE 410(4) prohibits the admission at trial of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." Thus, a statement must be suppressed pursuant to KRE 410 when it is made "in the course of plea discussions" and those discussions are "with an attorney for the prosecuting authority." KRE 410(4). First and foremost, Kreps meets the second requirement under KRE 410 because his statement was made in discussions with an attorney for the prosecuting authority. This Court has held that even when the prosecuting authority is not physically present, this requirement is met when "law enforcement agents state they are acting with the express authority ... from a government

---

**2.** Officer Drew's side of the conversation is clearly audible on the taped statement played for the jury.

agent." *Roberts v. Commonwealth*, 896 S.W.2d 4, 6 (Ky.1995). Here, Officer Drew telephoned the prosecutor in the presence of Kreps, and after ending their phone call, represented to Kreps that the prosecutor had no problem with charging him with Class D felonies and running them concurrently. In making this statement to Kreps, Officer Drew communicated that he was acting with the prosecutor's authority. The more difficult question is whether Kreps made his statement in the course of a plea discussion.

■ This Court has adopted a two-prong test in order to determine whether a defendant's statements have been made in the course of plea discussions: "[w]hether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and whether the accused's expectation was reasonable given the totality of the objective circumstances." *Roberts*, 896 S.W.2d at 5–6. At the very least, it is clear that when Kreps began his interview with Officer Bell, he intended to negotiate his charges down to misdemeanors in exchange for cooperating with the police and providing a statement. Kreps voluntarily went to the Graves County Sheriff's office in order to discuss his relationship with A.S. and specifically asked to speak with the prosecuting attorney several times in order to make a deal. Thus, Kreps had an actual subjective expectation to negotiate a plea and satisfies the first prong of the analysis. *See Roberts*, 896 S.W.2d at 6. However, it is less clear whether Kreps's expectation was reasonable given the totality of the objective circumstances. *Id.*

The facts in this case do not establish a plea discussion as clearly as the facts set forth in *Roberts, supra*. In that case, which is the only published Kentucky case on point, Roberts informed the interrogating officer, Detective Duncan, that he was worried about receiving a Persistent Felony Offender charge and, in order to protect himself from receiving an "astronomical" sentence, that he wanted to cooperate with the Commonwealth's Attorney's office. *Roberts*, 896 S.W.2d at 5. After contacting the Commonwealth Attorney, Detective Duncan assured Roberts that "he would not be charged with a PFO I if he gave a complete, detailed and truthful statement concerning the robberies in question which could be corroborated by a police investigation." *Id.* The tape of Roberts's interview demonstrated that he understood the terms and conditions of this deal. *Id.* Roberts then confessed to being involved in eight different robberies. *Id.* At trial, the trial court permitted the Commonwealth to introduce Roberts taped statement, finding that it was admissible because it was voluntarily given. *Id.* On appeal, this Court ruled that Robert's statement should have been excluded pursuant to KRE 410, explaining that Roberts confession was clearly made in the course of plea discussions with a prosecuting authority.

Here, as noted above, Officer Drew informed Kreps that the prosecutor had explicitly rejected his initial proposal to reduce his felony charges to misdemeanors, which immediately makes this situation different from the exchange that took place in *Roberts, supra*. However, after speaking with the prosecutor on the phone, Officer Drew told Kreps that the prosecutor did not "have a problem reducing those [Class C felonies] to Class D felonies and running them concurrent." In response to Kreps asking whether that was the lowest level of felony, Officer Drew also informed Kreps that a Class D felony was just above a Class A misdemeanor. Although Kreps did not ask any additional questions about the specific deal, such as requesting confirmation that those would be his charges in

exchange for a confession or discussing any additional terms or conditions, the fact remains that soon after Officer Drew represented what the prosecutor was willing to do, Kreps confessed.

 After carefully reviewing the taped statement, we believe that it was reasonable for Kreps to expect that he and the Commonwealth were negotiating a plea based on the totality of circumstances. Even though Officer Drew originally stated that he could not promise Kreps anything and that the prosecutor would have to make the ultimate decision, later in the interview, Officer Drew informed Kreps that the prosecutor had made a decision about what felonies he would be charged with. Officer Drew unequivocally represented to Kreps that the prosecutor had no problem reducing Kreps's charges to Class D felonies and running them concurrently. Further, Officer Drew made this assurance immediately after speaking with the prosecutor on the phone in Kreps's presence. Thus, this is not the common scenario where the police simply encourage the defendant to give a statement with assurances that the defendant's cooperation will be viewed favorably by the prosecutor. Here, Kreps did not confess until Officer Drew spoke with the prosecutor on the phone and obtained his assurance that Kreps would be charged only with Class D felonies that would run concurrently. Based on "the totality of the objective circumstances," it was reasonable for Kreps to expect that he was participating in a plea negotiation and that he would be charged with Class D felonies that would run concurrently if he confessed. Consequently, Kreps's statement was taken in the course of a plea discussion with a prosecuting authority and should have been excluded at trial pursuant to KRE 410. Due to the fact that this statement was an important element of the Commonwealth's case and especially damaging to Kreps, this error cannot be deemed harmless. Therefore, Kreps's convictions must be reversed and the matter remanded for a new trial.[3]

## II. The Trial Court Did Not Err By Refusing to Allow Kreps to Question A.S. About A Prior Allegation of Abuse Or By Failing to Hold a Hearing To Determine the Admissibility of This Evidence.

 Because this issue may arise on retrial, this Court notes that the trial court did not err in prohibiting Kreps from asking A.S. about a prior allegation of abuse and did not err in refusing to hold a hearing to determine the admissibility of such evidence. Prior to trial, Kreps requested that the Commonwealth disclose any record of A.S. having made prior allegations of sexual abuse. On September 25, 2006, the Commonwealth provided these confidential reports to Kreps and the court during an unrecorded, *in camera* meeting. During trial, Kreps attempted to ask A.S. on cross-examination about these prior allegations. The prosecutor objected to this line of questioning and requested a bench conference. The Commonwealth informed the court that although there was some evidence of a prior allegation, it occurred over ten years prior, when A.S. was approximately six years old. Further, the prosecutor claimed that the affidavit, which apparently stated that A.S. had alleged that another child had abused her, "did not make much sense" and was not particularly reliable. Kreps responded that because a prior allegation is not sexu-

---

3. Having found that Kreps's entire statement was inadmissible because it was made in the course of plea discussions, the additional claims of error regarding its contents are now moot.

al behavior, this evidence should not be excluded due to KRE 412. Although the trial court noted that KRE 412 might apply, it ultimately ruled that A.S.'s age at the time of the prior allegation justified excluding this evidence.

Although there is no Kentucky Supreme Court case on point, the Kentucky Court of Appeals has addressed the admissibility of prior allegations of abuse made by the victim against persons other than the defendant. In *Hall v. Commonwealth*, 956 S.W.2d 224, 227 (Ky.App.1997), the Court of Appeals warned that "evidence of this nature is without a doubt prejudicial. Its admission would undermine the purpose of KRE 412, shifting the focus from the real issues, and effectively put the victim on trial." However, the court sanctioned an approach taken by other jurisdictions that permits prior accusations of abuse to be admitted in certain instances:

> If the unrelated accusations are true, or reasonably true, then evidence of such is clearly inadmissible primarily because of its irrelevance to the instant proceeding. Additionally, unrelated allegations which have neither been proven nor admitted to be false are properly excluded. If demonstrably false, the evidence still must survive a balancing test, i.e., the probative value must outweigh the prejudicial effect.

*Id.* Here, it is not clear whether A.S.'s prior allegation of abuse was proven or admitted to be false. Regardless, however, the fact remains that the trial court did not err in concluding that A.S.'s age at the time of the prior allegation weighed against admissibility. A.S.'s allegation made when she was six years old that she had been abused by another child has little or no probative value to a case regarding A.S., as a teenager, having sexual relationship with a thirty-eight year-old man. The prejudicial effect of this evidence would certainly outweigh its probative value, causing this evidence to fail the balancing test necessary for its admission. Therefore, the trial court did not abuse its discretion in excluding this evidence and Kreps would not be entitled to a new trial on this basis.

### CONCLUSION

Although Kreps's claim of error regarding A.S.'s prior allegation of abuse is unavailing, Kreps is correct that his police statement should have been excluded at trial because it was made in the course of plea discussions with a prosecuting authority. Therefore, the October 16, 2007 Judgment of the Graves Circuit Court is hereby reversed and this case is remanded for subsequent proceedings not inconsistent with this opinion.

All sitting. All concur.