Raymond CLUTTER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2010–SC–000630–MR.

Supreme Court of Kentucky.

April 26, 2012.

Steven Jared Buck, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for appellant.

Jack Conway, Attorney General of Kentucky, Jason Bradley Moore, Assistant At-

torney General, Office of Criminal Appeals, Frankfort, KY, Counsel for appellee.

Opinion of the Court by Justice ABRAMSON.

Following a bench trial, Appellant Raymond Clutter was convicted of murder and tampering with physical evidence and was found to be a persistent felony offender in the first degree (PFO 1). Clutter received life imprisonment and appeals as a matter of right. Ky. Const. § 110(2)(b). Clutter claims the trial court erred when it permitted a witness to testify about information provided by Clutter's then-attorney in pretrial discussions with a law enforcement agent for the Commonwealth. Clutter maintains the information constitutes statements made during plea discussions and thus is inadmissible under Kentucky Rules of Evidence (KRE) 410(4). Finding the trial court did not abuse its discretion in admitting the testimony, we affirm the judgment of the Boone Circuit Court.

### RELEVANT FACTS

According to the Commonwealth's proof, in the early morning hours of April 2, 1994 Peggy Casey accompanied Clutter, Clutter's son, Floyd, and Floyd's friend, Paul Anthony White, to Floyd's trailer in Florence, Kentucky. Floyd and White left to get beer and returned to find Casey half-dressed. When White and Casey went to a back bedroom to have sex, Casey told White that Clutter had raped her. Clutter then broke into the bedroom holding a serrated butcher knife, grabbed Casey by the hair and dragged her down the hall to the bathroom. While Casey pleaded for her life, Clutter attempted first to drown her, then strangle her, and eventually killed her by slitting her throat. Casey had several pre-mortem defensive wounds and injuries to her hands, forearms and face, indicating she was cut and struck repeatedly prior to death. After killing Casey, Clutter directed and helped Floyd and White to dismember Casey by decapitating her, cutting and snapping off her arms and legs and cutting her torso in two. The men then placed Casey's body parts in separate garbage bags, which they discarded in several different counties across southern Ohio. The men also disposed of Casey's purse in Cincinnati near a factory where Clutter worked. Casey's lower torso was found the following day, her legs were discovered on April 15th, her head on April 17th and her arms on April 19th. Casey's upper torso was never found. The case went "cold" after a year of investigation.

In 2000, while serving a ten-year sentence in federal prison on a murder for hire conviction and knowing separate felony charges were pending against him in Gallatin County, Kentucky, Clutter hired attorney Ron McDermott to investigate the possibility of having his federal sentence reduced or of receiving a deal on the Gallatin County charges in exchange for information he had. concerning the cold Casey case. On August 9, 2009, McDermott contacted Detective Todd Kenner of the Boone County Sheriff's Department and informed Detective Kenner that he represented a client who had information about a murder that occurred in Boone County, Kentucky several years earlier. During this initial call, McDermott gave Detective Kenner specific information about the crime but did not reveal the identities of Clutter, Floyd or White or even the victim's name. Upon McDermott's request, Detective Kenner contacted the Assistant United States Attorney (AUSA) who prosecuted Clutter on the federal murder for hire charges. The AUSA said it sounded like McDermott was talking about Raymond Clutter but he would need to know for certain the identity of McDermott's client before considering

any type of deal. McDermott then revealed to Detective Kenner that his client was indeed Ray Clutter and the other participants in the crime were Floyd Clutter and Tony White. After the AUSA declined to assist Clutter with a reduction in his federal sentence, McDermott requested Detective Kenner contact and set up a meeting with Commonwealth's Attorney Linda Tally Smith, who had the outstanding felony charges against Clutter in Gallatin County.[1] Detective Kenner, being previously aware of the Casey case, independently made the connection between that case and the facts McDermott provided and began investigating the Clutters' and White's involvement in Casey's murder and dismemberment.

On August 14, 2009, McDermott, Detective Kenner, Commonwealth's Attorney Smith and other law enforcement agents met in Commonwealth's Attorney Smith's office. McDermott did not provide any additional substantive information at this meeting and Commonwealth's Attorney Smith informed McDermott she would first have to verify Clutter's information before she would consider engaging in plea discussions. That meeting was the state's last substantial contact with McDermott. After Detective Kenner's renewed investigation, Clutter was indicted on December 21, 2004 in Boone County for murder, rape in the first degree and tampering with physical evidence in the Casey case.

Prior to trial, Clutter moved to exclude any statements made by McDermott during plea negotiations and to prevent the Commonwealth from calling McDermott as a witness. After several hearings, the trial court ruled the Commonwealth was prohibited from calling McDermott as a witness and from introducing during its case in chief any statements made by McDermott. The Boone County Circuit Court

conducted a bench trial from June 22 to June 30, 2010, during which Clutter recalled Detective Kenner in the defense's case and then questioned him extensively about why he never seriously investigated anyone else for Casey's murder. The Commonwealth argued in a bench conference that it should be able to rebut the defense's insinuation that Detective Kenner did not properly investigate the case by asking him how he came to learn that the Clutters and White were involved in Casey's murder. The trial court ruled in favor of the Commonwealth, which then elicited from Detective Kenner that he learned of the Clutters' and White's involvement from McDermott, Clutter's attorney at that time, and that he did not pursue other suspects because information he received during his investigation of the Clutters and White was consistent with details of the case that were not released to the public.

After reviewing all of the evidence, the trial court found Clutter guilty beyond a reasonable doubt of the murder of Peggy Casey and of tampering with physical evidence, but not guilty of rape in the first degree. The court sentenced Clutter to life in prison for murder and to five years for tampering with physical evidence, the latter of which was enhanced to twenty years by Clutter's status as a PFO 1. The sentences were ordered to run concurrently with each other but consecutive to a twenty-year sentence Clutter received in Gallatin Circuit Court for conviction of second-degree rape and second-degree sodomy.

## ANALYSIS

██ Clutter claims the trial court erred when it admitted information that was allegedly protected from disclosure by

---

1. Smith is the Commonwealth's Attorney for both Boone and Gallatin Counties.

KRE 410(4) as statements made in the course of plea discussions.[2] The standard of review for evidentiary issues is abuse of discretion, the test for which is "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky.2000). Having carefully reviewed the record and applicable law, we conclude the trial court did not abuse its discretion in admitting Detective Kenner's testimony.

KRE 410(4) prohibits the admission at trial of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." The rule applies to statements made by the defendant or his counsel. 23 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5347 (1st ed.2011); Advisory Committee's Notes to FRE 410.[3] Thus, to be inadmissible at trial on the basis of KRE 410(4), the statements must have been made in the course of "plea discussions" and those discussions must be "with an attorney for the prosecuting authority." As to the first requirement, a conversation constitutes "plea discussions" when (1) the accused exhibits an actual subjective expectation to negotiate a plea at the time of the discussion and (2) the accused's expectation is reasonable given the totality of the objective circumstances. *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir.1978); *Roberts*, 896 S.W.2d at 5–6. As to the second requirement, plea discussions "with an attorney for the prosecuting authority" include discussions with the prosecutor as well as discussions with law enforcement officials who are either acting with the express authority of the prosecutor or who state they are acting with such authority. *Roberts*, 896 S.W.2d at 6. *See also Kreps v. Commonwealth*, 286 S.W.3d 213 (Ky.2009).

In *Roberts*, the defendant confessed to the police after the officers obtained and conveyed to the defendant the Commonwealth's Attorney's assurance that the defendant would not be charged as a PFO 1 if he gave a complete and honest confession. 896 S.W.2d at 5. The *Roberts* Court found the defendant's statements were made "with an attorney for the prosecuting authority," despite the Commonwealth's Attorney's physical absence from the meeting, because the officers bargained with the defendant on the express authority of the Commonwealth's Attorney. *Id.* at 6. Similarly, in *Kreps*, the defendant confessed after police officers spoke with the Commonwealth's Attorney on the phone, in the defendant's presence, and ascertained the prosecutor would reduce the charges against the defendant in exchange for a confession. 286 S.W.3d at 218. As in *Roberts*, the Court in *Kreps* held the defendant's statements were made "with an attorney for the prosecuting authority" because, even though the Commonwealth's Attorney was not physically present during plea discussions, the officers told the defendant they were acting with the prosecutor's authority. *Id.* at 219.

---

2. Appellant devotes a portion of his brief to arguing defense counsel did not open the door to evidence that was otherwise inadmissible under KRE 410(4). However, because we hold the information provided by Detective Kenner was not barred by KRE 410(4), we need not address whether defense counsel opened the door.

3. KRE 410 was modeled on and is largely identical to Federal Rule of Evidence 410 and this Court has previously relied on federal precedent to interpret and apply KRE 410. See *Roberts v. Commonwealth*, 896 S.W.2d 4, 5 (Ky.1995).

Clutter's claim that Detective Kenner's testimony was barred by KRE 410(4) fails because, unlike in *Roberts* and *Kreps,* the statements in question were not made "with an attorney for the prosecuting authority." All of the information about which Detective Kenner testified, in fact all of the information McDermott provided about the Casey case, came out during McDermott's conversations with Detective Kenner on August 9, 2009. Clutter's stated purpose at that time, according to his appellate brief, was to secure a reduction of his federal sentence and, or alternatively, to reach a plea agreement on the pending Gallatin County charges. There were no pending Boone County charges nor does Clutter maintain that he was seeking a plea deal on any anticipated Boone County charges. His motion to the trial court, like his appellate brief, refers only to the federal charges and the pending Gallatin County charges. For purposes of KRE 410(4), Detective Kenner, a member of the Boone County Sheriffs Department, was not the proper party for McDermott to engage in an attempt to negotiate the pending felony charges in Gallatin County. Detective Kenner was not a prosecutor, he did not have the prosecutor's express authority to offer a plea deal, he never stated or implied that he had such authority, he never made any offers and he never even suggested, as often happens, that Clutter's cooperation would be considered favorably by the prosecutor. For KRE 410(4) to apply, the statements must be made to "an attorney for the prosecuting authority" or someone with authority and Detective Kenner was not such a person as to the Gallatin County charges. Moreover, it is axiomatic that there could be no "plea discussions" as to the federal charges for which Clutter had been convicted and sentenced and for which he was then serving time.

While McDermott did eventually speak with an "attorney for the prosecuting authority" when he met with Commonwealth's Attorney Smith, McDermott did not provide any new information at that meeting or any time thereafter. All of the information at issue came from McDermott's telephone conversations with Detective Kenner on August 9. As Detective Kenner was not an "attorney for the prosecuting authority" or a person with authority, KRE 410(4) did not bar the admission of his testimony. The trial court properly exercised its discretion to admit Detective Kenner's testimony.

## CONCLUSION

In order for KRE 410(4) to apply, the statements must be made in the course of "plea discussions" and those discussions must be "with an attorney for the prosecuting authority." The latter phrase encompasses not only prosecutors but also law enforcement agents who are either acting with the express authority of the prosecutor or who state they are acting with such authority. McDermott provided the information at issue to Detective Kenner, who was not "an attorney for the prosecuting authority" or a person authorized by the prosecutor who brought the Gallatin County charges. As such, KRE 410(4) did not apply/to bar the admission of Detective Kenner's testimony. The Judgment of the Boone Circuit Court is affirmed.

All sitting. All concur.