RENDERED: MAY 19, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0030-MR

MICHAEL L. DENNISON                         APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.         HONORABLE CHARLES L. CUNNINGHAM, JR., JUDGE
ACTION NO. 19-CR-000445-001

COMMONWEALTH OF KENTUCKY                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, DIXON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE: Appellant, Michael L. Dennison ("Dennison"), appeals from a judgment of conviction by the Jefferson Circuit Court following a conditional guilty plea. He argues that the Trial Court erred by denying his motion to suppress a statement given to the police because it was made in the course of plea negotiations. Because Dennison did not have a reasonable belief that he was

engaging in such negotiations when he made the statement, we conclude that the Trial Court did not err in denying his motion to suppress the statement. Hence, we affirm the conviction.

On February 11, 2019, a Jefferson County grand jury returned an indictment charging Dennison with complicity to first-degree robbery, second-degree assault, and theft by unlawful taking over $10,000.00. A supplemental indictment charged Dennison with being a persistent felony offender in the second degree (PFO II). Thereafter, Dennison filed a motion to suppress his statement made to the police at the time of his arrest. The Trial Court held a hearing on the motion on November 4, 2019. Detective Kendra Kraemer of the Louisville Metro Police Department was the only testifying witness.

Detective Kraemer testified that she encountered Dennison during her investigation of a robbery and assault on Sonny Suo ("Suo"). She stated that, on November 12, 2018, three individuals assaulted Suo with a crowbar. They stole $50,000.00 in cash, ginseng root valued at approximately $100,000.00, and Suo's vehicle. Subsequently, Christopher Matlock ("Matlock") and Carolyn Peyton ("Peyton") were arrested, and both implicated Dennison. Upon further investigation, another individual identified Dennison as the seller of the stolen ginseng.

On December 15, 2018, Dennison was arrested for a parole violation. Detective Kraemer interviewed him later that day. In addition to Detective Kraemer's testimony, the Commonwealth introduced a recording of the interview, which took place over several hours. After reading Dennison his *Miranda*[1] rights, Detective Kraemer asked to speak with Dennison about the robbery. Dennison admitted to knowing Suo, Matlock, and Peyton, and he was aware that the latter two had been arrested.

Detective Kraemer told Dennison that Matlock and Peyton implicated him, and she outlined the evidence against him. But she further told Dennison that she wanted to hear "your side" of the story. Dennison asked Detective Kraemer how much time he would serve if he gave a statement. Detective Kraemer responded that she would have to talk to the Assistant Commonwealth Attorney, and that he would make a plea offer depending on the statement and Dennison's criminal history.

Detective Kraemer and Dennison took a smoke break, and that portion of the conversation was also recorded. Dennison asked Detective Kraemer if, in exchange for his cooperation, he could be eligible for parole after serving the two years he was facing for his parole violation. Detective Kraemer advised that his

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

imprisonment sentences could be run concurrently but that she would have to talk to the prosecutor about the calculation of time in the context of parole. She reiterated to him that she would have to talk to a prosecutor and could not promise him anything "right now." She added that the plea bargain process would require a written offer by a prosecutor.

Detective Kraemer sent a text message to Assistant Commonwealth's Attorney, Joshua Waldrop ("Waldrop"), asking what type of sentence Dennison would be facing. Shortly thereafter, Waldrop texted back, "his exposure is bad, so confessing will help out his exposure. It is still a robbery one." Detective Kraemer surmised that Waldrop wanted to hear what Dennison had to say. She advised Dennison that the minimum sentence for first-degree robbery is ten years' imprisonment, of which he would have to serve 85% of that time. Dennison stated he would not serve eight-and one-half years.

Dennison and Detective Kraemer spent the next few minutes discussing the statements by his co-defendants and the evidence against him. Dennison refused to answer Detective Kraemer's questions, stating he "did not even have a plea deal yet." He then added, "I'm ready to do a confession for the right deal, but if it's not the right deal, then I'm dead." Detective Kraemer responded that she could not give him a deal then, and that any deal would depend on the information he provided. Dennison repeated that he would not accept eight

and one-half years.  Detective Kraemer replied, "as of right now, I cannot give you a number and the prosecutor said the same thing."  She reiterated that she could not make a plea offer, and that no offer would be made until the prosecution had all the evidence.

Detective Kraemer then asked what part Dennison played in the robbery.  Dennison said, "This might be the death of me and you might not be able to help me after this, it just is what it is.  If you don't end up helping me, I know."  Dennison then confirmed that everything his co-defendants told her was correct, except that he did not have a crowbar, and he was not the "ringmaster" of the crime.

After giving his statement, Detective Kraemer allowed Dennison to call his mother.  "I done my confession and we talked about it and everything."  He told her, "They don't need to give me no plea deal so they can do what they want, like they did down there, but I'm hoping it's not like that here."[2]  Following the phone call, Dennison asked Detective Kraemer if she would tell the prosecutor that he wanted to become a better person, but that he needed help and wanted to help people.  Detective Kraemer said she would work on that and "Talk to him down the road."  The interview ended with Dennison stating that he did what he did, and

---

[2] Dennison was referring to his prior experience with a guilty plea in another county.

he would pay for it.  On cross-examination, Detective Kraemer stated Dennison asked about the possibility of being eligible for parole after two years or reducing the charges to Class D felonies.  She answered that she would have to talk to the prosecutor, and she could not promise anything right then.

Dennison's counsel argued that he reasonably believed that Detective Kraemer was engaging in plea negotiations on behalf of the Commonwealth.  After considering the arguments of counsel, the Trial Court denied Dennison's motion to suppress his statement, finding that no plea offer was conveyed to Dennison, and that no reasonable person would have believed there was a plea deal in place when Dennison confessed.  The Trial Court further determined that Dennison's statements indicated that he did not subjectively believe he had an offer in place.

After the Court denied the motion, Dennison entered a conditional plea of guilty to all three charges.  In exchange for his plea, the Commonwealth dismissed the PFO II charge.  The Trial Court sentenced Dennison to ten years' imprisonment.  Dennison now appeals from the denial of his motion to suppress the confession.

RCr[3] 8.27 sets out the procedure for conducting a suppression hearing. Although the current rule does not specifically address an appellate standard of

---

[3] Kentucky Rules of Criminal Procedure.

review, our review remains the same as under the prior rule, RCr 9.78. *Simpson v. Commonwealth*, 474 S.W.3d 544, 547 (Ky. 2015). "First, the factual findings of the court are conclusive if they are supported by substantial evidence" and second, this Court conducts "a *de novo* review to determine whether the [trial] court's decision is correct as a matter of law." *Stewart v. Commonwealth*, 44 S.W.3d 376, 380 (Ky. App. 2000) (citing *Adcock v. Commonwealth*, 967 S.W.2d 6, 8 (Ky. 1998)).

Dennison sought to suppress his confession under KRE[4] 410(4). This section prohibits the admission of statements "made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." By its express terms, KRE 410(4) only applies to statements made to a prosecutor. However, Kentucky Courts have held this section to be applicable to statements in certain situations where the statements were given to a police officer who was acting on behalf of a prosecutor.

The parties agree that the standard for evaluating the issue was set forth in *Roberts v. Commonwealth*, 896 S.W.2d 4 (Ky. 1995), and *Kreps v. Commonwealth*, 286 S.W.3d 213 (Ky. 2009), which both involve discussions

---

[4] Kentucky Rules of Evidence.

between police officers and defendants. In *Roberts*, the defendant was a suspect in a series of armed robberies. During an interview with a police officer, Roberts expressed concern about being charged as a persistent felony offender (PFO) and requested the officer contact the Commonwealth's Attorney's office. The First Assistant Commonwealth's Attorney assured Roberts that he would not be charged with PFO I if he gave a complete, detailed, and truthful statement concerning the robberies in question that could be corroborated by a police investigation. Roberts then proceeded to confess to eight robberies. However, the Commonwealth believed he was not being truthful in the details of these robberies or in his denial of four other robberies. Consequently, the Commonwealth indicted Roberts for all 12 robberies. *Roberts*, 896 S.W.2d at 5.

On appeal, the Supreme Court noted that KRE 410 contemplates a bargaining process whereby the Commonwealth and the accused seek a confession for a concession. *Id.* The Court adopted a two-prong test to be applied in determining whether a conversation should be characterized as a plea discussion: first, whether the accused exhibited an actual, subjective expectation to negotiate a plea at the time of the discussion; and second, whether the accused's expectation was reasonable given the totality of the objective circumstances. *Id.* at 5-6.

The Supreme Court held that Roberts knowingly, willingly, and voluntarily struck a bargain that he would not be charged as a PFO in return for a

complete and truthful statement. Since Roberts' statement was neither truthful nor complete, the Commonwealth was not bound by its agreement and was free to try Roberts as a PFO. But the Court also held that Roberts' statement was clearly made in the course of plea discussions with the prosecutor. Consequently, that statement was not admissible against him at trial. *Id.* at 6.

Similarly, in *Kreps*, the defendant was questioned by police about his suspected sexual relationship with a minor. During an interview, the police officer initially informed Kreps that he could not promise him anything specific because he was not the prosecutor in this case. *Kreps*, 286 S.W.3d at 217. The officer eventually informed Kreps that he was facing four Class C felonies, which could result in five to ten years' imprisonment on each count. *Id.* Kreps stated he would be willing to give a confession if the charges could be reduced to misdemeanors. The police officer tried to contact the prosecutor on the phone, but was unable to reach him. *Id.* at 217-18.

At that point, Kreps stated that he was willing to accept Class D felonies with concurrent sentences. *Id.* When the prosecutor returned the call, the officer told Kreps that the prosecutor "was offering a little bit," but had "refused to reduce any of [the charges] to a misdemeanor . . . primarily just because of the nature of these particular offenses." *Id.* at 218. The officer then informed Kreps that the prosecutor "did not have a problem with reducing the Class C felonies to

Class D and running them concurrently." *Id.* After considering the matter, Kreps gave a confession. But despite the officer's representations, the prosecutor obtained an indictment against Kreps for two Class D felonies and two class C felonies. *Id.*

Based on *Roberts*, the Supreme Court held that Kreps' statement should have been excluded pursuant to KRE 410. The Court noted that the facts did not establish a plea discussion as clearly as those in *Roberts* because Kreps never spoke directly with the prosecutor. Nevertheless, the Court found that Kreps reasonably relied on the officer's statement that the prosecutor was willing to reduce the charges to Class D felonies and run them concurrently. Since Kreps reasonably believed that he was negotiating with the Commonwealth, the Court held that his subsequent confession was inadmissible. *Id.* at 220.

There are some similarities between the facts in *Kreps* and those in the current case. Most notably, Dennison and Detective Kraemer engaged in a lengthy discussion about the effect of him giving a confession. Dennison specifically asked about the possibility of reduced charges in exchange for his cooperation. Detective Kraemer directly contacted the prosecutor to ask about the range of possible sentences. Furthermore, both Detective Kraemer and Waldrop indicated that a confession may reduce Dennison's exposure to a longer sentence.

-10-

However, those similarities are far outweighed by the differences. Unlike in *Kreps*, Detective Kraemer repeatedly told Dennison that she was not in a position to negotiate a plea deal and could not promise anything. When she contacted Waldrop, he emphasized that Dennison was still facing a first-degree robbery charge, and merely suggested that confessing would "help his exposure." And unlike in *Roberts* and *Kreps*, Waldrop never indicated an agreement to a specific charge or sentence. Furthermore, even after he gave the statement, Dennison told his mother that he did not have a "deal."

The Court in *Kreps* drew a distinction between those facts and "the common scenario where the police simply encourage the defendant to give a statement with assurances that the defendant's cooperation will be viewed favorably by the prosecutor." *Id.* at 220. On the other hand, we agree with Dennison that a defendant may have a reasonable expectation to negotiate a plea even if no specific offer is made. But for the expectation to be reasonable, both parties to the discussion must show a willingness to negotiate in exchange for a statement or confession.

Given the totality of the circumstances, the Trial Court did not clearly err by finding that Dennison lacked an actual, subjective expectation to negotiate a plea at the time of the discussion or by holding that his expectation of favorable treatment was objectively unreasonable given the totality of the facts. Although

-11-

Dennison clearly sought to obtain a reduction of the charges or sentences in exchange for a confession, neither Detective Kraemer nor the prosecutor expressed any willingness to do so. To the contrary, both Detective Kraemer and Waldrop took pains to say that no offer was on the table, but that only Dennison's confession may be viewed favorably. Therefore, we agree with the Trial Court that his statement was not subject to exclusion under KRE 410(4).

Accordingly, we affirm the judgment of conviction by the Jefferson Circuit Court.


ALL CONCUR.


BRIEFS FOR APPELLANT:

Christopher B. Thurman
Louisville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Melissa A. Pile
Assistant Attorney General
Frankfort, Kentucky