# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: AUGUST 24, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000696-MR

JEFFREY ROHRBACK                                        APPELLANT

V.
ON APPEAL FROM MASON CIRCUIT COURT
HONORABLE STOCKTON B. WOOD, JUDGE
NO. 14-CR-00058

COMMONWEALTH OF KENTUCKY                       APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Jeffrey Lynn Rohrback, appeals from a judgment entered by the Mason Circuit Court pursuant to a conditional guilty plea to first-degree rape. For this offense, Rohrback was sentenced to twenty years' imprisonment. He appeals as a matter of right. Ky. Const. § 110(2)(b). Rohrback alleges that the circuit court erred: 1) by denying his motion to suppress his statements to law enforcement; and 2) by denying his motion to enforce a plea agreement.

For the following reasons, we affirm the judgment and sentence of the Mason Circuit Court.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 31, 2014, Maysville Police Department Detective Jered Muse visited Rohrback's apartment as part of an investigation into the alleged rape

and sexual abuse of a ten-year-old girl. Detective Muse requested that Rohrback accompany him to the police station, which was across the street from Rohrback's apartment. Rohrback agreed and the pair walked back to the police station for questioning.

At the beginning of the interview, Detective Muse informed Rohrback that he was free to leave and informed him of his *Miranda* rights. Approximately one hour into the interview, the topic of a polygraph examination came up. At that point, Rohrback stated that "I want to go. I want to leave." However, Detective Muse continued to question Rohrback. At the end of the interview, Detective Muse asked if he could photograph Rohrback's apartment. Rohrback agreed and the two walked over to the apartment together.

Several hours later, Rohrback returned to the lobby of the police station and requested to speak with Detective Muse. Once in the interview room, Detective Muse reminded Rohrback that he was free to leave at any time. *Miranda* warnings were not repeated by Detective Muse for Rohrback's second interview. After making several incriminating statements, Rohrback concluded the interview and returned home.

Shortly thereafter, Detective Muse again visited Rohrback's apartment and asked him if he was willing to write a letter of apology to the victim. Subsequently, Rohrback accompanied Detective Muse to the police station where he wrote a letter of apology, which included incriminating statements. After completing the letter, Rohrback was arrested by Detective Muse.

In April 2014, Rohrback was indicted by the Mason County grand jury for two counts of first-degree rape, two counts of first-degree sexual abuse, and for being a second-degree persistent felony offender. After indictment, Rohrback moved to suppress his oral and written statements to Detective Muse arguing that they were obtained in violation of "[his] *Miranda* Rights, Right to Counsel and Right to Remain Silent." The circuit court held a hearing to consider Rohrback's claims. After hearing testimony from Detective Muse, the circuit court concluded that Rohrback was not in custody when interviewed by the police and as such denied the motion to suppress.[1]

After the denial of his motion to suppress, Rohrback withdrew his plea of not guilty and entered a conditional guilty plea. Rohrback pled guilty to a single count of first-degree rape. The remaining charges were dismissed. For this offense, the Commonwealth recommended a total sentence of twenty years, and the circuit court sentenced Rohrback accordingly. Rohrback now appeals as a matter of right.

---

[1] At the suppression hearing, the circuit court also heard testimony concerning a statement Rohrback made to a social worker from the Cabinet for Health and Family Services. That statement was determined to be inadmissible at trial as Rohrback had not been *Mirandized* and was subjected to a custodial interview by a state actor at the Mason County Detention Center.

## ANALYSIS

### I. The Circuit Court Properly Denied Rohrback's Motion to Suppress.

Rohrback argues that the circuit court erred in denying his motion to suppress.[2] Initially, he contends that his confessions to police should have been suppressed due to inadequate *Miranda* warnings. Rohrback also claims that the police failed to discontinue questioning when he requested to end the interview. We reject both arguments.

Kentucky Rule of Criminal Procedure (RCr) 8.27 governs motions to suppress evidence. *Davis v. Commonwealth,* 484 S.W.3d 288, 290 (Ky. 2016). RCr 8.27(2) mandates that the circuit court "conduct a hearing on the record and before trial on issues raised by a motion to suppress evidence." Appellate review of the circuit court's ruling on a suppression motion "is a two-step process that first reviews the factual findings of the trial court under a clearly erroneous standard." *Welch v. Commonwealth,* 149 S.W.3d 407, 409 (Ky. 2004) (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S. Ct. 1657, 1663 (1996)).[3] Second, the Court "reviews *de novo* the applicability of the law to the facts found." *Id.*

---

[2] Rohrback contends that the admission of this evidence violated his privilege against self-incrimination, as protected by the Fifth Amendment to the United States Constitution and Section 11 of the Kentucky Constitution.

[3] While RCr 8.27 does not articulate an appellate standard of review, we have concluded that the application of Kentucky Rule of Civil Procedure (CR) 52.01, *i.e,* "[a] finding supported by substantial evidence is not clearly erroneous," provides the applicable standard. *See Simpson v. Commonwealth,* 474 S.W.3d 544, 547 (Ky. 2015) (quoting *Hunter v. Mena,* 302 S.W.3d 93, 97 (Ky. App. 2010)).

Having reviewed the circuit court's factual findings, we find that they are supported by substantial evidence. The circuit court's order accurately summarized each of Rohrback's interviews with the police. Accordingly, our review of the record establishes that the circuit court's factual conclusions are supported by the evidence. Moreover, we agree with the circuit court's legal conclusion that Rohrback was not in custody during any of the relevant times.

## A. Rohrback Was Not in Custody for *Miranda* Purposes

Rohrback contends that Detective Muse gave him inadequate *Miranda* warnings which downplayed the availability of an attorney during the questioning.[4] However, Rohrback was not even entitled to *Miranda* warnings as he was not in custody when questioned by police.

The Supreme Court "has determined that a suspect under custodial interrogation must be given notice of the right against self-incrimination, with such notice being contained in the *Miranda* warnings." *Fugett v. Commonwealth*, 250 S.W.3d 604, 616 (Ky. 2008) (citing *United States v. Crossley*, 224 F.3d 847, 861 (6th Cir. 2000)). Thus, the necessity of that notice arises from the fact that the suspect was subjected to a custodial interrogation. "It is the 'compulsive aspect of custodial interrogation, and not the strength or content of the government's suspicions at the time the questioning was

---

[4] The Commonwealth contends that Rohrback's challenge to his third interview with police is not properly preserved for appeal. That interview consisted of Rohrback writing an apology letter to the victim in this case. The Commonwealth argues that Rohrback's failure to include that letter in the record should bar our review. However, we decline to do so and will consider the merits of Rohrback's claim.

conducted' that implicates *Miranda.*" *United States v. Uzenski*, 434 F.3d 690, 704 (4th Cir. 2006) (quoting *Beckwith v. United States*, 425 U.S. 341, 346, 96 S. Ct. 1612, 1616 (1976)). Custodial interrogation has been defined as "questioning initiated by law enforcement after a person has been taken into custody or otherwise deprived of freedom of action in any significant way." *Fugett*, 250 S.W.3d at 618 (quoting *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky. 2006)).

"[T]he initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Jackson v. Commonwealth*, 187 S.W.3d 300, 310 (Ky. 2006) (quoting *Stansbury v. California*, 511 U.S. 318, 320, 114 S. Ct. 1526, 1528-29 (1994)). "[T]he ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Id. See also Thompson v. Keohane*, 516 U.S. 99, 112, 116 S. Ct. 457, 465 (1995). ("[W]ould a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave[?]"). Additionally, "[a] custody determination cannot be based on bright-line rules, but must be made only after considering the totality of the circumstances of each case." *Jackson*, 187 S.W.3d at 310.

Regarding the circumstances of Rohrback's first interview, Detective Muse went to Rohrback's home to ask if he would accompany him across the street to the police station for questioning. Subsequently, Rohrback voluntarily accompanied Detective Muse to the police station. Once in the interview room,

6

Detective Muse informed Rohrback that he was free to leave at any time. There is no suggestion by Rohrback that he was restrained or threatened with the use of physical force during his interview. At the close of the interview, Rohrback left the police station without hindrance. After reviewing the totality of Rohrback's first interview, we cannot say that there was a restraint on his liberty to the degree associated with a formal arrest, as required to constitute custody. *See Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977) (defendant was not in custody when questioned at police station, where he went voluntarily, was informed he was not under arrest, and was permitted to leave the station after his interview).

Nor was Rohrback in custody during his second interview with police. Not long after his first interview, Rohrback returned to the police station of his own volition and requested to speak with Detective Muse. After Rohrback and Detective Muse reentered the interview room, Detective Muse again reminded Rohrback that he was free to leave at any time. After a thirty-minute interview, Rohrback left the police station and walked home. A review of the totality of the circumstances clearly establishes Rohrback was not in custody during this second, voluntary encounter. *See United States v. Brown,* 7 F.3d 1155, 1164 (5th Cir. 1993) (defendant not in custody where he "voluntarily appeared at the police station, gave the statement, and left the station of his own accord.").

Nor was Rohrback in custody during his third and final interview with the police. Shortly after Rohrback's second interview, Detective Muse went to Rohrback's residence. Detective Muse asked if Rohrback would return to the

7

police station to write a letter of apology to the victim. The possibility of Rohrback writing a letter to the victim had been discussed in his earlier interviews. Rohrback agreed and accompanied Detective Muse back to the station. Subsequently, Detective Muse left Rohrback alone in the interview room to write his letter. When Rohrback finished writing, Detective Muse read the letter and placed Rohrback under arrest.

The circuit court noted that it was unclear whether Rohrback would have been permitted to leave the police station after returning to write the letter, had he not composed same. Yet, the circuit court determined that the writing of the letter was done at a time when Rohrback was not in custody. The basis for this conclusion was due to the fact that "[Rohrback] had not been arrested; he had voluntarily been to the Maysville Police Department twice earlier that day, and he had voluntarily returned earlier without being prompted to do so, for a second interview." After considering the totality of the circumstances of Rohrback's third interview with police, we agree with the circuit court that Rohrback was not in custody. *See Joseph v. Coyle*, 469 F.3d 441, 468 (6th Cir. 2006) (defendant was not in custody despite being voluntarily transported from workplace to sheriff's office by deputy, having already been questioned by police twice earlier that day, and not having been told that he was free to leave the interrogation).

Accordingly, we reject Rohrback's claim that he was in custody on each occasion that he was interrogated by the police. As Rohrback was not in

8

custody, his questioning by the police did not implicate *Miranda*. Therefore, the circuit court properly denied Rohrback's motion to suppress on this issue.[5]

### B. As Rohrback's Was Not in Custody for *Miranda* Purposes His Invocation of His Right to Silence Was Ineffective.

Rohrback contends that he invoked his right to remain silent during questioning, but that Detective Muse ignored this invocation and continued the interrogation. Specifically, when asked to take a polygraph examination during his first interrogation, Rohrback informed Detective Muse, "I want to go. I want to leave." Rohrback argues that his statements made after he requested to end the interview should be suppressed as Detective Muse "failed to scrupulously honor his right to cut off questioning."

---

[5] However, even if we were to agree with Rohrback that he was in custody when questioned by the police, the *Miranda* warnings given in this case were sufficient. At the beginning of Rohrback's first interrogation, Detective Muse told him:

> [t]hat you have the right to remain silent, anything you say can and will be used against you in court. You have the right to an attorney; if you can't afford one the courts will appoint one for you. You don't have to answer my questions, you say, "I ain't talking to you no more, I want to speak to an attorney" then that's it. You understand that?

Rohrback contends that this recitation of his *Miranda* rights, "did not adequately inform [] Rohrback that he could have a lawyer present there with him during the questioning. Instead [Detective] Muse implied that speaking with an attorney was something [] Rohrback would do later, after questioning." We disagree. Detective Muse's *Miranda* warning adequately conveyed the essential information to Rohrback. The Supreme Court has emphasized that it "has never indicated that the 'rigidity' of *Miranda* extends to the precise formulation of the warnings given a criminal defendant." *California v. Prysock*, 453 U.S. 355, 359, 101 S. Ct. 2806, 2809 (1981). Further, the Supreme Court has explained that "reviewing courts are not required to examine the words employed 'as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by Miranda.'" *Florida v. Powell*, 559 U.S. 50, 60, 130 S. Ct. 1195, 1204 (2010) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S. Ct. 2875, 2880 (1989)).

9

When a person "is in custody and subjected to police interrogation [he] must be informed of his right against self-incrimination, or as standard in *Miranda* warnings, his right to remain silent." *Bartley v. Commonwealth*, 445 S.W.3d 1, 5 (Ky. 2014) (citing *Miranda*, 384 U.S. 436, 444-45, 86 S. Ct 1602, 1612 (1966)). However, the privilege against self-incrimination is not automatic, but must be claimed by the accused. *Id.* (citing *United States v. Monia*, 317 U.S. 424, 427, 63 S. Ct. 409, 410 (1943)). The Supreme Court has repeatedly recognized that "no ritualistic formula or talismanic phrase is essential in order to invoke the privilege against self-incrimination." *Emspak v. United States*, 349 U.S. 190, 194, 75 S. Ct. 687, 690 (1955). Rather, the words used by the accused in invoking his rights are to be "understood as ordinary people would understand them[.]" *Connecticut v. Barrett*, 479 U.S. 523, 529, 107 S. Ct. 828, 832 (1987). Further, while the accused's invocation of his rights need not be formal, his assertion of silence must be unequivocal. *Buster v. Commonwealth*, 364 S.W.3d 157, 162 (Ky. 2012) (citing *Berghuis v. Thompkins*, 560 U.S. 370, 381, 130 S. Ct. 2250, 2256 (2010)). After the assertion of the right to remain silent, the police must end the interrogation. *Id.* at 163.

In the case at bar, Rohrback clearly asserted his right to silence. By stating that he "want[ed] to go" and "want[ed] to leave," it was obvious that Rohrback sought to discontinue his interview with Detective Muse. Additionally, when Detective Muse asked Rohrback for clarification, "[s]o you just want to leave it like this?", Rohrback replied, "[l]eave it. Let the chips fall

10

where they may. I mean, I know what I did and didn't do, I'm sorry for wasting your time." It is evident that Rohrback wished to discontinue his interview with Detective Muse and expressed his desire to do so.

Rohrback contends that Detective Muse's continued questioning violated his right to silence and as such mandated the suppression of his subsequent statements to police. We disagree as Detective Muse was only required to cease his questioning if Rohrback asserted his right to silence while being the subject of a custodial interrogation.

> Miranda's commandment that questioning cease when a suspect indicates he intends to exercise his Fifth Amendment privilege does not apply, however, in situations . . . where the defendant has available the easier and more effective method of invoking the privilege simply by leaving. . . . Law enforcement officers enjoy the same liberty as every other citizen to address questions to other persons. When those persons are not in custody or deprived of their freedom of action in any significant way, they have an equal right to ignore such questions and walk away and do not need the protection of Miranda.

*Springer v. Commonwealth*, 998 S.W.2d 439, 447 (Ky. 1999) (quoting *State v. Davis*, 290 S.E.2d 574, 585 (N.C. 1982)); *see also McNeil v. Wisconsin*, 501 U.S. 171, 182 n. 3, 111 S. Ct. 2204, 2211 n. 3 (1991). ("We have in fact never held that a person can invoke his Miranda rights anticipatorily, in a context other than 'custodial interrogation[.]'").

Given that Rohrback was not in custody, he was not in need of or entitled to the protections of *Miranda*. Rohrback was free to ignore Detective Muse's questions or simply end his interrogation by walking out of the police

11

station. Accordingly, Detective Muse's continued questioning did not violate Rohrback's right to remain silent.

## II. The Circuit Court Properly Denied Rohrback's Motion to Enforce a Plea Agreement

Rohrback contends that the circuit court erred by denying his motion to enforce a plea agreement allegedly reached with the Commonwealth. Additionally, Rohrback argues that if the plea agreement was not to be enforced, that the circuit court should have suppressed his statements to police made in conjunction with those plea discussions.[6] The standard of review for the circuit court's evidentiary ruling is abuse of discretion. *Meskimen v. Commonwealth*, 435 S.W.3d 526, 534 (Ky. 2013) (citing *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007)).

Kentucky Rule of Evidence (KRE) 410(4) bars the admission at trial of "any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn." "[A] conversation constitutes 'plea discussions' when (1) the accused exhibits an actual subjective expectation to negotiate a plea at the time of the discussion and (2) the accused's expectation is reasonable given the totality of the objective circumstances." *Clutter v. Commonwealth*, 364 S.W.3d 135, 138 (Ky. 2012) (citing *United States v.*

---

[6] Rohrback also argues that his statements should have been suppressed due to coercion. This argument was not presented to the circuit court and as such it will not be considered on appeal. *See Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976), overruled on other grounds by *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). ("[A]ppellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court.").

12

*Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978)); *Roberts v. Commonwealth*, 896 S.W.2d 4, 5-6 (Ky. 1995)). "[P]lea discussions 'with an attorney for the prosecuting authority' include discussions with the prosecutor as well as discussions with law enforcement officials who are either acting with the express authority of the prosecutor or who state they are acting with such authority." *Id.* (citing *Roberts*, 896 S.W.2d at 6).

At the hearing on Rohrback's motion, the circuit court heard testimony from both Detective Muse and Rohrback about whether a plea offer had been extended. Rohrback testified that Detective Muse said something to the effect of "if you really care about the child, you would admit it, write an apology letter, and leave the state for eight years." Detective Muse testified that when he spoke to Rohrback he did not state or imply to Rohrback that he had communicated with the Commonwealth's Attorney or that he had authority from the Commonwealth's Attorney to make a plea offer. Detective Muse did admit, in concluding a conversation with Rohrback, that he said "if you ever decide you want to come and speak to me anymore, maybe I can go and talk to the family about you going out of state." Detective Muse also noted that he informed Rohrback during his interrogation that he had not spoken to the victim's family and that it was important that he not "man up" to something he did not do.

After hearing this testimony, the circuit court concluded "that there was no offer by Detective Muse, that [Rohrback] could not have reasonably interpreted what was said as an offer, that Detective Muse did not represent

13

that the Commonwealth's Attorney had authorized any offer, and that in fact the Commonwealth's Attorney had not authorized any offer." Additionally, the circuit court noted that in Rohrback's recorded interview, he appeared to acknowledge it was the decision of the victim's mother as to whether he would be permitted to go out of state. As such, the circuit court determined that Rohrback was aware that "the victim's mother had to give approval but had not been consulted, that there was no offer; there was only a hope that the victim's family would request leniency."

After reviewing the record, we agree with the circuit court that there was no plea offer extended to Rohrback. Further, we conclude that KRE 410(4) is not applicable in the case at bar. Even if we were to find that there was sufficient evidence to establish Rohrback's subjective expectation to negotiate a plea, his expectation was unreasonable given the totality of the objective circumstances.

Detective Muse gave no indication to Rohrback that he had spoken to the prosecuting authority or that he was empowered to enter into plea negotiations. Further, Detective Muse informed Rohrback that he had not yet spoken to the victim's family, which would be essential to any potential resolution. Rohrback appears to acknowledge this reality in his discussion with Detective Muse, understanding that it would be the victim's mother's decision as to whether he would be permitted to leave the state. As such Rohrback was aware that there was no plea offer, but rather that he was cooperating out of a hope that the family would request leniency from the

14

Commonwealth's Attorney and the circuit court. As Rohrback's expectation to negotiate a plea was unreasonable under the totality of the objective circumstances, the circuit court properly exercised its discretion in denying Rohrback's motion.

## CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of the Mason Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate
Department of Public Advocacy


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Leilani K. M. Martin
Assistant Attorney General
Office of Criminal Appeals