RENDERED: FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1382-MR

BOBBY RAY OSBORNE                  APPELLANT

v.            APPEAL FROM ESTILL CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
ACTION NO. 21-CR-00006

COMMONWEALTH OF KENTUCKY          APPELLEE

AND

NO. 2022-CA-1383-MR

BOBBY RAY OSBORNE                  APPELLANT

v.            APPEAL FROM ESTILL CIRCUIT COURT
HONORABLE MICHAEL DEAN, JUDGE
ACTION NO. 21-CR-00008

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION

AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, JONES, AND TAYLOR, JUDGES.

CALDWELL, JUDGE:  The matter before the Court concerns two separate appeals concerning two separate contacts between law enforcement and the Appellant, Bobby Ray Osborne (Osborne), at his home.  Because the facts and questions of law are disparate, we will first discuss matter number 2022-CA-1382-MR followed by 2022-CA-1383-MR.

**No. 2022-CA-1382-MR**

**FACTS**

On October 21, 2020, law enforcement received a tip that a stolen travel trailer might be located on Osborne's property.  Kentucky State Police Trooper Ty Robinson (Trooper Robinson), accompanied by Estill County Sheriff Chris Flynn and a deputy from the Clark County Sheriff's Department, went to Osborne's home to investigate.  Upon arrival, the officers found Osborne outside his home, exiting from a vehicle.  The officers told Osborne they were there to investigate a report of a stolen trailer being located on his property and asked for permission to search for it.  Osborne consented to the search for the trailer.

While obtaining Osborne's consent to search the environs of his home for the trailer, Trooper Robinson noticed two bulges in Osborne's front pockets.

-2-

Having dealt with Osborne in the past, Trooper Robinson knew Osborne would sometimes carry a small handgun in his front pocket, so he asked Osborne what was in his pockets. Osborne then removed a large wad of cash and a bag containing what appeared to be a controlled substance from his pockets. He then attempted to hide the baggie behind his back. Trooper Robinson retrieved the substance from Osborne and placed him in custody. Osborne was ultimately charged with trafficking in a controlled substance in the first degree and possession of drug paraphernalia.

Following the trial court's denial of a motion to suppress the substance he had in his pocket, Osborne entered a conditional guilty plea, reserving his right to appeal the determination. He was sentenced to five (5) years' imprisonment to run concurrent with the sentence imposed in the other matter herein appealed. We affirm.

## STANDARD OF REVIEW

On appellate review of a trial court's ruling on a motion to suppress evidence, a reviewing court will not disturb the trial court's findings of fact unless they are found to be clearly erroneous. The application of the law to those factual findings is reviewed by the appellate court *de novo*. "When reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a *de novo* standard of review for conclusions of law."

*Jackson v. Commonwealth*, 187 S.W.3d 300, 305 (Ky. 2006) (citing *Welch v. Commonwealth*, 149 S.W.3d 407, 409 (Ky. 2004)).

## ANALYSIS

Osborne complains the trial court erred in holding that he consented to a direction to remove the contents of his pockets. He argues the finding of the court was erroneous because he characterizes Trooper Robinson's testimony as varied. He complains Trooper Robinson described variously that he "told" Osborne to empty his pockets or he "asked" him what was in his pockets or to remove his hands from his pockets or to quit placing his hands in his pockets.

Osborne argues since the search warrant affidavit filed by law enforcement after the arrest indicated Trooper Robinson "restrained" Osborne's hands after the baggie of presumed controlled substance was observed, the "search" was rendered not consensual. The Commonwealth disagrees and argues law enforcement officers were at all times on the property properly and for a legitimate purpose. The controlled substance was found by law enforcement in plain view and the Fourth Amendment was not implicated. We agree with the Commonwealth.

As the Commonwealth indicates, the Fourth Amendment is not implicated when law enforcement officers approach a home in a manner as any other person would also approach for a legitimate purpose. These encounters

between law enforcement and citizens in their homes are generally known as a

"knock and talk."

> The knock and talk procedure is a helpful and commonly used police tool, often applied in situations as mundane as looking for a lost pet or to ask if the homeowner has seen a suspicious person in the neighborhood. In general, an officer knocking on the door to ask for citizen assistance is appreciated and the citizens are cooperative. However, that is not always the case, as some citizens desire privacy and to be left alone to the enjoyment of their home. Controversy may arise when the officer is not looking for assistance from the resident, but rather is using the procedure to look for evidence of wrongdoing by the resident, and approaches the home to ask for consent to search or to aid in spotting evidence in plain view or plain smell.

*Quintana v. Commonwealth*, 276 S.W.3d 753, 757 (Ky. 2008) (footnote omitted).

In *Quintana*, the Kentucky Supreme Court first explored the investigatory procedure and its propriety. While clearly the interior of one's dwelling carries the utmost constitutional protections, how far such protections extend to the curtilage, or the immediate outside environs of the dwelling, are less clear. In *Quintana*, the Court announced if, as here, law enforcement officers approach the home of a citizen as any other member of the public would – delivery persons, Girl Scouts selling cookies, or postal workers –the resident's consent to an approach is presumed.

> The answer in basic knock and talk cases then is clear: the officer who approaches the main entrance of a house has a right to be there, just as any member of the

public might have. When a resident has no reasonable expectation to privacy if someone approaches his front door for a legitimate purpose, police officers may also so approach. As a leading treatise on the subject has noted, the basic rule is

> "that police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the public," and in so doing they "are free to keep their eyes open and use their other senses." This means, therefore, that if police utilize "normal means of access to and egress from the house," for some legitimate purpose, such as to make inquiries of the occupant or to introduce an undercover agent into the activities occurring there, it is not a Fourth Amendment search for the police to see or hear or smell from that vantage point what is happening inside the dwelling.

*Id.* at 758 (citations omitted).

Further, we agree with the Commonwealth that Osborne was not coerced into complying with the request or order or question concerning what was in his pockets, whatever form it took. Even if Trooper Robinson asked Osborne to remove his hands from his pockets or to remove the contents of his pockets, any request for the purpose of officer safety would not constitute a seizure implicating the Fourth Amendment.

> In this case, Officer Richmond's first request for Appellant to remove his hands from his pockets clearly was not a seizure. Officer Richmond acknowledged that Appellant was not under suspicion at that time, and the request was merely a safety precaution. Ironically, had Appellant removed his hands from his pockets, and had no illegal substances been forthcoming from that act, he

-6-

would have been free to leave, having not exhibited any other criminal conduct.

*Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999).

Once Osborne removed his hands and the officers observed a baggie of what appeared in plain view to be contraband, they were not required to ignore it.

> In this case, the marijuana was in plain view. As such, there is no dispute as to whether the officers had probable cause to believe that Appellant was in possession of a controlled substance. Moreover, since the contraband was in plain view, it was also reasonable for them to believe that the drugs were in imminent danger of being destroyed in the absence of immediate action to secure the evidence. *See Ker v. California*, 374 U.S. 23, 28, n.3, 83 S. Ct. 1623, 1627, n.3, 10 L. Ed. 2d 726 (1963) (referring to the ease and speed with which drugs can be destroyed) and *Illinois v. McArthur*, 531 U.S. 326-327, 121 S. Ct. 946, 948, 148 L. Ed. 2d 838 (2001) (police had good reason to fear that, unless restrained, defendant would destroy drugs before they could return with a warrant). Therefore, the circumstances in this case were exigent and as such, the officers acted reasonably when they entered the home without a warrant, restrained and arrested Appellant, and then secured the evidence which was in plain view (i.e. the marijuana and the shot gun shells).

*Posey v. Commonwealth*, 185 S.W.3d 170, 173-74 (Ky. 2006).

Osborne would have us find the trial court erred in holding the contraband was in plain view, but we are not persuaded the finding was erroneous. Osborne argues the officers described "bulges" in his front pockets and could not

identify what the bulges consisted of until he removed the cash and baggie. However, once Osborne removed the contents of his pockets, revealing the baggie containing apparent controlled substances, the contraband was in plain view. "The plain-view exception to the warrant requirement applies when the object seized is plainly visible, the officer is lawfully in a position to view the object, and the incriminating nature of the object is immediately apparent." *Chavies v. Commonwealth*, 354 S.W.3d 103, 109 (Ky. 2011), *abrogated on other grounds by Morris v. Commonwealth*, 2019-SC-0606-MR, 2021 WL 1133612 (Ky. Mar. 25, 2021) (citing *Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301, 2307-08 110 L. Ed. 2d 112 (1990)).

We have already explained the officers had every right to approach the Osborne residence in their search for the stolen trailer. They approached the home as any other visitor would have and encountered Osborne outside the front door of his home. For the safety of the officers, he was either asked what was in his pockets or told to remove his hands or objects from his pockets. Once Osborne removed the baggie from his pocket, the item was plainly visible and clearly incriminating.

In the trial court, Osborne filed a motion for additional findings of fact following the entry of the order denying the motion to suppress. That motion was denied and now Osborne complains on appeal the trial court's findings in the order

denying the motion were inadequate.  He complains the trial court did not address whether the officers had reasonable, articulable suspicion to justify the "*Terry* stop."[1]  The Commonwealth answers this encounter between the officers and Osborne was not a *Terry* stop.  We agree with the Commonwealth and as we have previously stated, this encounter was rather an investigative knock and talk, though the officers never had to knock on Osborne's door, having found him exiting a vehicle in his front yard.  Such a consensual encounter does not typically implicate the Fourth Amendment.

> There are three types of interaction between police and citizens:  consensual encounters, temporary detentions generally referred to as *Terry* stops, and arrests.  The protection against search and seizure provided by the Fourth Amendment to the United States Constitution applies only to the latter two types.  Generally, under the Fourth Amendment, an official seizure of a person must be supported by probable cause, even if no formal arrest of the person is made.  However, there are various narrow exceptions based on the extent and type of intrusion of personal liberty and the government interest involved. In the seminal case of *Terry v. Ohio*, the Supreme Court held that a brief investigative stop, detention and frisk for weapons short of a traditional arrest based on reasonable suspicion does not violate the Fourth Amendment.  *Terry* recognized that as an initial matter, there must be a "seizure" before the protections of the Fourth Amendment requiring the lesser standard of reasonable suspicion are triggered.  A police officer may approach a person, identify himself as a police officer

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

and ask a few questions without implicating the Fourth Amendment.

*Baltimore v. Commonwealth*, 119 S.W.3d 532, 537 (Ky. App. 2003) (citations omitted).

As we do not find the Fourth Amendment was implicated by the encounter, and Osborne was only detained *after* he removed contraband from his pocket, there was no need for the trial court to enter findings relevant to a *Terry* stop.

The order of the trial court, and the denial of the motion for additional findings are affirmed.

**No. 2022-CA-1383-MR**

**FACTS**

On August 26, 2020, Trooper Ty Robinson, accompanied by other law enforcement officers, arrived at Bobby Osborne's residence to conduct an investigation after receiving a multitude of tips over a long period of time concerning drug activity occurring on the property. As the officers approached the main home, they could observe adult individuals engaging in drug use in outbuildings to the left and the right of the main residence. The officers were able to observe scales, baggies, suspected controlled substances believed to be heroin and saw some of the individuals actively using needles.

-10-

The officers cleared the individuals out of the outbuildings and Trooper Robinson went to the front door of the residence to secure Osborne. Osborne answered the door but refused to leave his home. Concerned he may destroy evidence located inside his home, Trooper Robinson grabbed Osborne by the arm and pulled him out of the door. Trooper Robinson then entered the home and completed a protective sweep to ensure no other persons were located in the residence. No one else was found and Trooper Robinson observed no contraband.

Osborne was detained while officers awaited a search warrant, the affidavit supporting which cited the observations of the law enforcement officers on that night, as well as the prior tips. Once the warrant was obtained, Osborne's residence was searched and suspected methamphetamine and heroin were found, along with scales, drug paraphernalia and over $9,000 in cash. Osborne was charged with two counts of trafficking in a controlled substance and possession of drug paraphernalia.

A motion to suppress the drugs and paraphernalia was filed by counsel for Osborne. Osborne argued the entry into his home by Trooper Robinson prior to the issuance of the warrant was illegal and the tips relied upon were not sufficiently described so as to provide probable cause for the issuance of the warrant. The trial court overruled the motion. We affirm the trial court.

## STANDARD OF REVIEW

The standard of review remains the same. On appellate review of a trial court's ruling on a motion to suppress evidence, a reviewing court should not disturb the trial court's findings of fact unless they are found to be clearly erroneous. The application of the law to those factual findings is reviewed by the appellate court *de novo*.

## ANALYSIS

Osborne's argument must fail. His complaint that Trooper Robinson performed an illegal search when he conducted a protective sweep does not implicate the evidence which he seeks to suppress. Under the "attenuation doctrine," violative conduct of the police which is not directly connected to the discovery of the evidence sought to be suppressed cannot be held to be cause for suppression.

> Recognized exceptions to the exclusionary rule "involve the causal relationship between the unconstitutional act and the discovery of evidence." *Utah v. Strieff*, [579] U.S. [232, 238], 136 S. Ct. 2056, 2061, 195 L. Ed. 2d 400 (2016). One exception, at issue here, is the so-called attenuation doctrine. Under that doctrine, "if the connection between the illegal police conduct and the discovery and seizure of the evidence is 'so attenuated as to dissipate the taint [imposed by the original illegality]'" the evidence is not excluded. [*Segura v. United States*, 468 U.S. 796, 805, 104 S. Ct. 3380, 3385, 82 L. Ed. 2d 599 (1984)] (quoting *Nardone v. United States*, 308 U.S. 338, 341, 60 S. Ct. 266, 84 L. Ed. 307 (1939)). An attenuated connection occurs "when the connection

between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance." *Strieff*, 136 S. Ct. at 2061.

*Easterling v. Commonwealth*, 580 S.W.3d 496, 506 (Ky. 2019).

We find it was the observations of the police, lawfully present on the property to conduct an investigation, given the complaints of drug activity they had received, which were the basis for the issuance of the search warrant and provided probable cause. Nothing observed during the entry into the home by Trooper Robinson was cited in the affidavit. Nothing was seized by Trooper Robinson during his foray into the home prior to the issuance of the search warrant.

Even if were we to assume Trooper Robinson's protective sweep of the home following Osborne's detention were violative, a question we do not have to explore here, the fruit-of-the-poisonous-tree doctrine would not require suppression of the evidence later discovered and seized by virtue of the search warrant. In exploring the attenuation doctrine in a case involving the police use of technology to establish the geolocation of a cell phone, our Supreme Court observed:

> We do not have to resolve this "thorny question," [*United States v. Caraballo*, 963 F. Supp. 2d 341, 360 (D. Vt. 2013)], however, because we do not believe that the fruit-of-the-poisonous-tree doctrine would extend to the incriminating evidence in this case (such as the videos on the cell phone), even if the "ping" was an unconstitutional search. Unquestionably, "the exclusionary rule reaches not only primary evidence

-13-

obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 82 L. Ed. 2d 599 (1984) (citations omitted). Exclusion "extends as well to the indirect as the direct products of [unconstitutional searches]." *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

*Hedgepath v. Commonwealth*, 441 S.W.3d 119, 125 (Ky. 2014).

Osborne's complaints about the validity of the tips mentioned in the affidavit were dissipated by the actual first-hand observations of the officers who observed two groups of people actively using both methamphetamine and heroin in garages located upon Osborne's property. The warrant was properly issued and the trial court's order denying suppression was not erroneous.

## CONCLUSION

We find the Estill Circuit Court's orders denying both motions to suppress were not erroneous. We affirm both orders.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Thomas P. Jones
Beattyville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Matthew F. Kuhn
Solicitor General

Rachel A. Wright
Assistant Solicitor General
Frankfort, Kentucky